[No. 33498-1-I.    Division One.    July 5, 1994.]

BERT E. GILMAN, ET AL, *Respondents*, v. A.P.
MACDONALD, ET AL, *Appellants*.

*Jeffrey M. Eustis*, for appellants.

*William K. McInerney, Jacqueline L. Tacher*, and *McInerney & Baker*, for respondents.

*Christine O. Gregoire, Attorney General*, and *James K. Pharris, Senior Assistant; Kevin J. Hamilton, Randolph Beck, Lawrence C. Watters*, and *Eric Hultman*, amici curiae.

GROSSE, J. — A.P. MacDonald and Denise MacDonald (MacDonald) appeal the order denying their request for attorney fees pursuant to RCW 4.24.510, which provides a defense of immunity for complaints or communications to public officials and agencies made in good faith and provides for an award of attorney fees in the event one prevails on the defense in a civil action.

MacDonald claims the trial court erred (1) by concluding that MacDonald was not entitled to attorney fees because he did not act in good faith in his communications to governmental officials; and (2) by using a negligence standard to determine whether he acted in good faith. We hold that in a defamation action the proper standard for determining whether the defendant acted in good faith for purposes of RCW 4.24.510 is the actual malice standard. Using this standard, we conclude that the Respondents failed to show by clear and convincing evidence that MacDonald acted with knowledge of the falsity of his statements or with reckless disregard as to their falsity. Accordingly, we reverse the trial court's judgment and remand for a determination of the amount of attorney fees to which MacDonald is entitled below and on appeal.

MacDonald owns a home in the High Valley subdivision in Issaquah. The property is downhill from and adjacent to a 63-acre tract owned by the Respondents, Bert E. Gilman, Eileen R. Gilman, Aaron Gilman, Betty Gilman, James E. Thompson, Betty G. Thompson, Donald F. Fleming, and

Annemarie Fleming.[1] Thompson is developing the property into a 12-lot subdivision known as Windsor Highlands. In September 1987, Thompson cleared several acres of deciduous trees from the site, after which downhill property owners experienced flooding on their property. In October 1987, the Department of Natural Resources (DNR) issued a stop work order on timber cutting at Windsor Highlands. The order provided that a forest practice application would be required for any further timber cutting, but that "already down material" was not affected by the order.

In August 1988, the King County Building and Land Development Division (BALD) preliminarily approved Thompson's short plat application. Three groups appealed the approval: (1) two adjacent property owners (not MacDonald), (2) the High Valley Association, and (3) the High Valley Community and Saddle Club.[2] The King County hearing examiner granted the appeal and remanded the matter to BALD for consideration of different access routes into Windsor Highlands. BALD again approved Thompson's short plat application in May 1990. Several residents appealed, but the hearing examiner denied the appeal. Final plat approval was granted in March 1992.

In 1991, MacDonald wrote a number of letters to officials of BALD and to King County Executive Tim Hill concerning drainage from Windsor Highlands and the flooding that had occurred on his property. At issue here are MacDonald's statements in these letters alleging that Thompson had illegally cleared 20 to 22 acres of land within Windsor Highlands.[3]

---

[1] To be consistent with the parties' designation, the Respondents will be collectively referred to as "Thompson".

[2] The latter two entities are organizations of homeowners in the High Valley subdivision. MacDonald is a member of the High Valley Community and Saddle Club.

[3] MacDonald's contention varies from between 20 and 22 allegedly illegally cleared acres. In addition to the letters to the county officials, MacDonald wrote a letter to the Issaquah Press, which was published, in which he stated "Windsor Highlands illegally cleared 21 acres".

In July 1991, Thompson filed a complaint for defamation, commercial disparagement, and intentional interference with business relationships against MacDonald. MacDonald answered and moved for summary judgment alleging, *inter alia*, his statements were qualifiedly privileged and Thompson's action was barred by RCW 4.24.510 because Mac-Donald's statements were good faith communications of matters of concern to a governmental agency. MacDonald sought attorney fees under RCW 4.24.510.

The court granted MacDonald's motion with respect to the statements made to county officials on the ground they were qualifiedly privileged. The court concluded that because Thompson failed to present clear and convincing evidence that MacDonald acted with actual malice, the statements were qualifiedly privileged under common law.

However, the trial court denied MacDonald's motion for summary judgment on his claim under RCW 4.24.510 for immunity from liability for his statements to county officials, and reserved the issue of attorney fees for trial. Using a negligence standard, the court determined that MacDonald did not act in good faith in communicating the information to the government agencies.[4] Thompson then moved for and was granted a voluntary nonsuit under CR 41(a)(1)(B) as to the claims that survived MacDonald's motion for summary judgment.

Next, MacDonald filed a pleading entitled "Defendant MacDonalds' Motion for Summary Judgment on Request for Attorney Fees", seeking attorney fees under RCW 4.24.510, RCW 4.84.185, and CR 11. The court denied the motion, finding "no genuine issue of fact or law exists and the Mac-Donalds are not entitled to an award of costs and attorney fees under RCW 4.24.510, 4.84.185 or Rule 11." MacDonald

---

[4]The court stated: "[T]he good faith standard is like the negligence standard in that what that means is that there was a duty to have a fair and impartial investigation and that there were — that Mr. MacDonald was without reasonable grounds for a belief in its truth." The court also denied MacDonald's motion for summary judgment as to the statements made in the letter to the Issaquah Press.

appealed this order directly to the Supreme Court, which transferred the case to this court.[5]

A threshold question of appealability arises because the order from which MacDonald is appealing is designated an order denying his motion for summary judgment on the attorney fees issue. The denial of a motion for summary judgment is not an appealable order. *Dunning v. Paccerelli*, 63 Wn. App. 232, 244, 818 P.2d 34 (1991), *review denied*, 118 Wn.2d 1024 (1992). However, the trial court's order was in essence an order denying MacDonald's request for attorney fees under RCW 4.24.510, and had the effect of terminating the proceeding. Accordingly, the order is appealable under RAP 2.2(a)(3), which allows a party to appeal from a written decision of the superior court "affecting a substantial right in a civil case which in effect determines the action and prevents a final judgment or discontinues the action."

RCW 4.24.510 provides:

> A person who in good faith communicates a complaint or information to any agency of federal, state, or local government regarding any matter reasonably of concern to that agency shall be immune from civil liability on claims based upon the communication to the agency. A person prevailing upon the defense provided for in this section shall be entitled to recover costs and reasonable attorneys' fees incurred in establishing the defense.

MacDonald claimed this statutory immunity in response to Thompson's common law defamation claim arising out of MacDonald's statements to various county officials. When Thompson took a voluntary nonsuit with respect to, *inter alia*, the claims MacDonald alleged were barred by RCW 4.24.510, MacDonald was entitled to seek an award of attorney fees under the statute on the ground he prevailed upon the statutory defense. As discussed, in evaluating whether MacDonald prevailed upon the defense, the trial court analyzed the issue of whether he acted in good faith using a negligence standard and held MacDonald to a duty to make

---

[5]MacDonald's appeal focuses solely on his request for attorney fees under RCW 4.24.510. The issue of whether he is entitled to attorney fees under RCW 4.84.185 and/or CR 11 is not before us.

a fair and impartial investigation and to have reasonable grounds to believe the truth of his statements.

■ We conclude the trial court erred by applying this standard and hold that, where RCW 4.24.510 is raised as a defense in a common law defamation action, the determination of whether a party has prevailed upon the defense, *i.e.*, acted in good faith, is to be made using the same principles that govern claims of abuse of a qualified privilege in common law defamation actions.

In a common law defamation action, communications to a public officer who is authorized or privileged to act on the matter communicated are qualifiedly privileged. *Getchell v. Auto Bar Sys. Northwest, Inc.*, 73 Wn.2d 831, 836, 440 P.2d 843 (1968).

> A qualified privilege protects the maker from liability for an otherwise defamatory statement unless it can be shown that the privilege was abused. *Bender v. Seattle*, 99 Wn.2d 582, 600, 664 P.2d 492 (1983). The burden of establishing abuse of a qualified privilege rests on the defamed party, who must show by clear and convincing evidence the declarant's knowledge of the falsity, or his or her reckless disregard as to the falsity of the statement. *Lillig v. Becton-Dickinson*, 105 Wn.2d 653, 658, 717 P.2d 1371 (1986); *Bender*, 99 Wn.2d at 601.

*Story v. Shelter Bay Co.*, 52 Wn. App. 334, 341-42, 760 P.2d 368 (1988); *see also Caruso v. Local 690, Int'l Bhd. of Teamsters*, 107 Wn.2d 524, 530-31, 730 P.2d 1299, *cert. denied*, 484 U.S. 815 (1987).[6]

It follows, and we so hold, that where a defendant in a defamation action claims immunity under RCW 4.24.510 on the ground his or her communications to a public officer were made in good faith, the burden is on the defamed party to show by clear and convincing evidence that the defendant

---

[6]In *Hanson v. Snohomish*, 65 Wn. App. 441, 828 P.2d 1133, *rev'd*, 121 Wn.2d 552, 852 P.2d 295 (1993), we stated that a qualified privilege is lost if the defendant's statements were not made after a fair and impartial investigation or upon reasonable grounds for belief in their truth. *Hanson*, 65 Wn. App. at 448. In light of the cases discussed above, it is evident that this, standing alone, is an incorrect standard. However, we note that while failure to investigate or act with reasonable grounds for belief in the truth of a statement, without more, is not sufficient to establish abuse of a qualified privilege, it is nonetheless evidence of reckless disregard as to the falsity of a statement.

did not act in good faith. That is, the defamed party must show, by clear and convincing evidence, that the defendant knew of the falsity of the communications or acted with reckless disregard as to their falsity.

We conclude that this record does not contain clear and convincing evidence that MacDonald acted with knowledge of the falsity of his statements to the county officials or with reckless disregard as to their falsity.

Thompson contends MacDonald deliberately misconstrued the minutes of a meeting between Thompson and BALD members which stated that Thompson briefed a member concerning the Windsor Highlands tract as follows: "60 acres into 12 (5-acre) lots, zoned SE. $1/3$ NGPE, $1/3$ cleared,$1/3$ not cleared." Thompson claims this information indicated that one-third of the tract, or about 20 acres, would be cleared by the time the development project was complete, and not that 20 acres had been cleared at the time of the meeting. We disagree. The minute entry can be interpreted either way. MacDonald's reading of it to mean that 20 to 22 acres had already been cleared was a reasonable interpretation. There is no evidence in the record to show that MacDonald knew his interpretation of the minute entry was false or that he recklessly disregarded any information which would have led him to that conclusion.

Thompson also contends he assured MacDonald that the logging trucks MacDonald observed were not coming from Windsor Highlands. Even if MacDonald accepted Thompson's assurances as true, we cannot say that MacDonald's statements to the county officials that 20 to 22 acres of Windsor Highlands had been cleared were made with knowledge of their falsity or with reckless disregard as to their falsity, particularly in light of the totality of the information MacDonald possessed at the time he made the statements.[7]

---

[7]The record shows MacDonald based his conclusion as to the number of acres Thompson cleared upon: (1) his observations of logging trucks descending from the direction of Windsor Highlands and the corresponding appearance of mud in his ditch; (2) his personal observations of the Windsor Highlands property, which were necessarily limited due to the fact that he never crossed the boundary line into the property; (3) his examination of the contents of BALD's file; (4) his conversations with persons at DNR; and (5) his conversations with other nearby property owners.

Thompson contends the language of the DNR's order directing that all timber cutting at Windsor Highlands cease until a forest practices permit was issued should have indicated to MacDonald that the clearing which had occurred prior to the issuance of the order was legal, because the order specifically provided that already downed timber was not affected by the order. We disagree that this language gave MacDonald knowledge of the falsity of his statements. The fact that the downed timber was not covered by the order does not necessarily mean that any logging activity prior to the order was legal.

Finally, we reject Thompson's contention that MacDonald did not act in good faith by saying the clearing was "illegal" when the information he received from government officials was that the clearing was "unauthorized". In common parlance, "unauthorized" and "illegal" can have similar meanings. The record contains no clear and convincing evidence that MacDonald knew that "unauthorized" clearing did not mean "illegal" clearing or that he acted in reckless disregard of any distinction between the terms.

Although MacDonald might have been able to conduct further investigation into the clearing activity, we nevertheless find he communicated in good faith to the county officials. Thompson has failed to produce, and we cannot discern from our own review of the record, clear and convincing evidence that MacDonald acted with knowledge of the falsity of his statements or in reckless disregard as to their falsity.

Accordingly, we reverse the trial court's judgment and remand the matter for determination of the amount of attorney fees to which MacDonald is entitled below and on appeal.

BAKER and BECKER, JJ., concur.

Review denied at 125 Wn. 2d 1010 (1994).