[No. 22109-8-II.   Division Two.   July 17, 1998.]

THE STATE OF WASHINGTON, *Respondent*, v. JEREMY GRAHAM, *Appellant*.

*Judith H. Stone*, for appellant.

*Michael D. Smith, Prosecuting Attorney*, and *Judith C. Warner, Deputy*, for respondent.

BRIDGEWATER, A.C.J. — Jeremy Graham appeals his conviction of malicious mischief in the second degree. We are asked to decide whether manifest necessity existed for the trial court to declare a mistrial when the judge realized, after the first witness took the stand, that he was required to disqualify himself under the Code of Judicial Conduct (CJC) Canon 3(D)(1). We hold that where the judge correctly decides he must recuse himself, and there is no evidence of bad faith conduct by the judge, a manifest necessity exists for his recusal. We hold that the judge in this case did not abuse his discretion in finding a manifest necessity and, therefore, Graham's second trial was not barred by the constitutional prohibition against double jeopardy. We affirm.

Graham was charged in juvenile court with one count of malicious mischief in the first degree. The information charged that Graham had vandalized the property of the City of South Bend. Graham's bench trial was held on June 9, 1997, before Judge Pro Tem. Michael J. Sullivan.

Judge Sullivan presided over a CrR 3.5 hearing and made a ruling on the admissibility of Graham's statements to the police. Immediately thereafter, the State's first trial witness, South Bend police officer Sergeant Richard Pearson, was sworn and the State began its direct examination. In the middle of Sergeant Pearson's testimony, Judge Sullivan realized that he might have a conflict. He interrupted the proceedings with the following discussion:

> THE COURT: You know, something—I don't know why this—something just came to my mind on this that I'm obligated to bring forward. I have some connection to the City of South Bend . . . . Not to this case, I don't even know anything about this case other than what I'm hearing now. I haven't even heard scuttlebutt about it. But I do legal work for the City of South Bend.
>
> [DEFENSE COUNSEL]: Is that as City attorney, Your Honor?

THE COURT: Yes. And so the only way I probably would touch this one . . . is if it's agreed to. You're obviously under no obligation to agree . . . .

Graham did not agree to allow Judge Sullivan to continue to preside. Judge Sullivan therefore recused himself from the trial, which necessitated a mistrial. Judge Sullivan explained his reasons as follows:

The Code of Judicial Conduct Rule 3(d)(1) requires me to disqualify myself because I think it could reasonably be expected that my impartiality could be questioned. Frankly, it wouldn't but the point is it could reasonably be expected because South Bend is my client, ongoing client, so I don't think I have any choice.

The bench trial was reset before Judge Pro Tem. Douglas E. Goelz, again on the charge of malicious mischief in the first degree. Judge Goelz raised the issue of double jeopardy and set the case over to allow the parties time to brief the issue. After consideration, the court ruled that the Double Jeopardy Clause did not bar retrial. The judge found that the defendant did not consent to the mistrial, but held that double jeopardy did not bar retrial because there was no misconduct by Judge Sullivan or the State.

The Double Jeopardy Clause guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb."[1] U.S. CONST. amend. V. The federal Double Jeopardy Clause "is coextensive with Article 1, § 9 of the Washington Constitution." *State v. Corrado*, 81 Wn. App. 640, 645 n.4, 915 P.2d 1121 (1996) (citing *State v. Gocken*, 127 Wn.2d 95, 896 P.2d 1267 (1995)). The purpose of the Double Jeopardy Clause is

that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for

---

[1]The Double Jeopardy Clause applies to the states through the due process clause of the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969), *overruled on other grounds sub nom. Payne v. Tennessee*, 501 U.S. 808, 111 S. Ct. 2597, 115 L. Ed. 2d 720 (1991)).

an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green v. United States*, 355 U.S. 184, 187-88, 78 S. Ct. 221, 2 L. Ed. 2d 199, 61 A.L.R.2D 1119 (1957).

Double jeopardy bars trial if three elements are met: "'(a) jeopardy previously attached, (b) jeopardy previously terminated, and (c) the defendant is again in jeopardy 'for the same offense.' " *Corrado*, 81 Wn. App. at 645 (footnotes omitted). In this case, only the second element, whether jeopardy terminated with the mistrial, is at issue.[2] "A trial judge's decision to declare a mistrial without the defendant's consent after jeopardy has attached but before . . . a verdict will not in every instance bar retrial." *State v. Eldridge*, 17 Wn. App. 270, 276, 562 P.2d 276 (1977), *review denied*, 89 Wn.2d 1017 (1978). A trial judge has the discretion to declare a mistrial without terminating jeopardy where "there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." *Id.* at 276 (citing *United States v. Perez*, 22 U.S. 579, 580, 6 L. Ed. 165 (1824)). The trial judge is "vested with broad discretionary power to determine whether a trial should be aborted prior to verdict." *Id.* at 276-77.

While neither Judge Goelz nor Judge Sullivan used the words "manifest necessity," the only issue in this case is whether the reason for the mistrial—that Judge Sullivan felt compelled by the Canons of Judicial Conduct to recuse himself—constitutes a manifest necessity. While this issue is one of first impression in Washington, the Eleventh Circuit Court of Appeals has held that a mistrial necessitated by recusal in accordance with standards of judicial

---

[2]The first element is met because in a bench trial, jeopardy attaches when the first witness is sworn. *Corrado*, 81 Wn. App. at 646. Here, the first witness was already testifying when the mistrial was declared, so jeopardy had clearly attached. The last element is met because the charge was the same in both cases—malicious mischief in the first degree, a class B felony.

conduct does constitute a manifest necessity. *United States v. Kelly*, 888 F.2d 732, 746 (11th Cir. 1989). In *Kelly*, the trial judge was faced with the decision of whether to recuse himself because of a perceived bias resulting from his ex parte meeting in chambers with the wife of one of the State's witnesses, who was a close friend of the judge's wife. While the judge expressed the view that he probably should recuse himself, he did not because he was concerned that the resulting mistrial would bar retrial of the defendant under double jeopardy. The court held that the judge committed error by not recusing himself and went on to explain in a lengthy footnote why double jeopardy would not have barred retrial:

> Contrary to the judge's concerns, retrial would probably not have been barred in this case. Because this issue may recur in future cases, we find it appropriate to express our view that sua sponte recusal, when properly exercised according to any of the requirements of section 455,[3] constitutes "manifest necessity" for declaring a mistrial under *Arizona v. Washington*, 434 U.S. 497, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978).
>
> It has long been established that retrial is barred by double jeopardy principles following a mistrial declared over the objections of the defendant, absent a showing of "manifest necessity." *See Oregon v. Kennedy*, 456 U.S. 667, 672, 102 S. Ct. 2083, 2087, 72 L. Ed. 2d 416 (1982); *cf. id.* (retrial normally allowed where mistrial is "declared at the behest of the defendant"). In *Arizona v. Washington*, the Supreme Court held that a trial judge's declaration of mistrial because of prejudicial comments made to the jury by defense counsel satisfied the "manifest necessity" standard. The Court held: "In a strict, literal sense, the mistrial was not 'necessary.' Nevertheless, the overriding interest in the evenhanded administration of justice requires that we accord the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected by the improper comment." 434 U.S. at 511, 98 S. Ct. at 833; *see also id.* at 513-14,

---

[3]28 U.S.C.A. section 455(a) provides in relevant part: "Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Sections 455(a)-(c) are identical to our state Canons of Judicial Conduct, Canon 3(D).

98 S. Ct. at 834-35 (noting that judge's firsthand familiarity with the trial "militat[es] in favor of appellate deference to [his] evaluation of the significance of possible bias"). *Accord Abdi v. Georgia*, 744 F.2d 1500, 1503 (11th Cir. 1984), *cert. denied*, 471 U.S. 1006, 105 S. Ct. 1871, 85 L. Ed. 2d 164 (1985)*; see also United States v. Cousins*, 842 F.2d 1245, 1247 (11th Cir.), *cert. denied*, 488 U.S. 853, 109 S. Ct. 139, 102 L. Ed. 2d 111 (1988) (grant of mistrial based on possible jury prejudice "largely within the discretion of the district court").

These considerations apply even more strongly to the case at bar, which involves a judge acting as sole factfinder in a bench trial. The Court in *Arizona v. Washington* held that because the judge in that case exercised " 'sound discretion' . . . , the mistrial order is supported by the 'high degree' of necessity which is required in a case of this kind." *Id.* 434 U.S. at 516, 98 S. Ct. at 835. We hold, therefore, that where a trial judge properly exercises his discretion to recuse himself under section 455, "manifest necessity" is established for any resulting mistrial.

888 F.2d at 746 n.24.

Like the judge in *Kelly*, Judge Sullivan was required to recuse himself. CJC 3(D)(1) provides in relevant part: "Judges should disqualify themselves in a proceeding in which their impartiality might reasonably be questioned . . . ." "The CJC recognizes that where a trial judge's decisions are tainted by even a mere suspicion of partiality, the effect on the public's confidence in our judicial system can be debilitating." *Sherman v. State*, 128 Wn.2d 164, 205, 905 P.2d 355 (1995). "The test for determining whether the judge's impartiality might reasonably be questioned is an objective test that assumes that 'a reasonable person knows and understands all the relevant facts.' " *Id.* at 206 (quoting *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1313 (2d Cir. 1988), *cert. denied sub nom. Milken v. S.E.C.*, 490 U.S. 1102 (1989)). Judge Sullivan was the city attorney for the victim. While this fact may have resulted in no actual prejudice, it did raise a reasonable question as to his impartiality. Thus, Judge Sullivan correctly perceived that he was compelled by the Canons of Judicial Conduct to recuse himself.

Clearly, bad faith negates manifest necessity. *State v. Jones*, 26 Wn. App. 1, 5, 612 P.2d 404, *review denied*, 94 Wn.2d 1013 (1980), held:

> Careful scrutiny of a mistrial is required where there is evidence of bad faith conduct by judge or prosecutor or there is any reason to believe the superior resources of the State are being used to harass or achieve a tactical advantage over the accused. *Arizona v. Washington*, 434 U.S. 497, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978). Absent such evidence, however, a trial court's finding of manifest necessity should be accorded the highest degree of respect. *Arizona v. Washington, supra*; *State v. Eldridge, supra*.

In addition, the Court of Appeals noted in *Eldridge* that a trial court can abuse its discretion by aborting a trial even in the absence of bad faith. *See Eldridge*, 17 Wn. App. at 277-78. *Eldridge* cites the United States Supreme Court case *Downum v. United States*, 372 U.S. 734, 83 S. Ct. 1033, 10 L. Ed. 2d 100 (1963), in which the prosecution inadvertently failed to secure the presence of its key witness at trial and was therefore granted a mistrial. The Court held that there was no manifest necessity for the mistrial because the mistrial itself was unnecessary—the prosecution could have asked for a continuance or taken steps to locate the witness before trial. *Downum*, 372 U.S. at 737-38. Thus, negligent behavior can negate "manifest necessity" where there is an alternative to cure the situation. *See Eldridge*, 17 Wn. App. at 278.

We follow the analytical framework set forth in this prior case law. Negligence can negate manifest necessity if there is an alternative solution to the problem created. If there is no alternative to cure the situation, we then examine the acts of the court and prosecution to see if there is bad faith. If there is no bad faith, then the court's finding of manifest necessity is accorded the highest deference and is not an abuse of discretion. This framework is logical and encourages judges to view the Canons of Judicial Conduct in a broad fashion and to err, if at all, on the side of caution.

In this case, we have no evidence of bad faith on the part

of Judge Sullivan. We have no evidence that his knowledge of the conflict occurred before he noted it on the record. Further, we note that the volume and rapidity of matters being heard in juvenile court does not mandate or permit review of all matters by the judge before trial. The judge's behavior can be characterized, at most, as negligent,[4] but not bad faith. However, at the time the court discovered the conflict, there was no alternative to cure the appearance of a conflict of interest, except for recusal and mistrial.

Because we hold that the court's finding of manifest necessity was not an abuse of discretion, jeopardy did not terminate with the mistrial. Thus, Graham's claim of double jeopardy fails.

Affirmed.

MORGAN and SEINFELD, JJ., concur.

---

[4]We do not hold that the judge's behavior was negligent because we understand the hectic pace of juvenile court, where cases are heard in a very rapid fashion. The manner of hearings more resembles district court where the judge knows little of the issues until the witnesses begin testifying because opening statements may be waived, as was done in this case (the State waived opening statement and the defense reserved).