[Nos. 23815-2-II; 24133-1-II. Division Two. February 9, 2001.]

ALDOREN F. KAUZLARICH, *Appellant*, v. JESSE E. YARBROUGH, ET AL., *Respondents*.

634

636

*Marilyn R. Gunther*, for appellant.

*Joel E. Wright* and *Tamera L. Williams* (of *Lee, Smart, Cook, Martin & Patterson, P.S., Inc.*), for respondents.

BRIDGEWATER, J. — Aldoren Kauzlarich appeals the summary judgment dismissal of his defamation action against Jesse Yarbrough, opposing counsel, in an underlying child custody modification case. We affirm, holding that there is a qualified privilege, assuming that the defamatory statements were made. We also hold that Yarbrough is entitled to attorney fees under RCW 4.24.510 for the trial. We affirm in part, reverse in part, and remand for calculation of attorney fees.

Kauzlarich and Raelene Adolf had four children. After their relationship ended, Kauzlarich sought child custody modification in Pierce County Superior Court. Jesse Yarbrough represented Adolf. Kauzlarich alleges that Yarbrough defamed him during that child custody modification proceeding by informing the trial court that Kauzlarich made death threats. Judge Sauriol presided over pretrial matters. Judge Sebring presided over the custody modification trial in March 1993. Judge Sauriol contacted Judge Sebring and advised him that he thought it was in the best interest of the court and the courtroom to have security present during the trial with Kauzlarich.

Judge Sauriol's Judicial Assistant, Lettie Hendrickson, testified that she and Judge Sauriol expressed concerns to each other about Kauzlarich's behavior during pretrial proceedings. She testified that she was not contacted by Yarbrough about any security concerns or possible threats.

Judge Sebring testified that he was not contacted by Yarbrough nor did he receive any information about security concerns from Superior Court Administration.

At the conclusion of the underlying case, Judge Sebring ordered several nonconventional measures be taken. He ordered Kauzlarich to submit to a polygraph, to be immediately taken for an involuntary psychological evaluation, and to have his home searched for firearms. Kauzlarich lost custody of his children and his visitation was severely limited. Judge Sebring stated in his oral ruling that security had been present in the courtroom at the request of Judge Sauriol and because of possible threats.

Judge Sebring stated in his ruling:

> The deputy [who was present during the trial] was requested at the suggestion of Judge Sauriol, who felt that security would be appropriate given his prior contact with Mr. Kauzlarich, who is a party, and possible threats made by Mr. Kauzlarich which Judge Sauriol was aware of.
>
> I'm making this comment because I have been very cautious and careful to independently assess Mr. Kauzlarich based upon his actions in court and the evidence produced in court and not upon any preliminary comment from Judge Sauriol, which I'll indicate was very brief and directed only to the issue of it being a good idea to have security.

Clerk's Papers at 724.

In a declaration from 1994, Yarbrough stated that his client, Adolf, discussed safety concerns she had because of statements Kauzlarich made to their daughter, Rachael. Yarbrough explained that he advised Adolf to inform the guardian ad litem, William Abbott, of her concern, and Adolf did so. Yarbrough admitted that a few days prior to the custody modification trial he placed a call to Superior Court Administration, requesting that security be present in the courtroom during the trial because he believed Kauzlarich was dangerous and posed a significant risk to Adolf. Yarbrough stated that after he requested security, Superior Court Administration informed him that security had already been arranged. When Yarbrough revealed

these communications with Superior Court Administration during posttrial proceedings, Kauzlarich sued Yarbrough for defamation and other claims. Yarbrough completed a second declaration in 1996 which stated:

> The Friday before trial, I called the Superior Court Administration, explained to them that the trial was schedule[d] for the following Monday, that my client had concerns about her welfare, and asked if there could be some way to arrange for security in the courtroom to address my client's concerns. . . . I had no further discussions with Court Administration concerning this issue, nor did I ever get the details as to why my client felt that security would be necessary.

Clerk's Papers at 56.

By unpublished opinion dated June 28, 1996, we held that the failure of the trial court to inform Kauzlarich of the communication between two judges violated the appearance of fairness doctrine. *Kauzlarich v. Adolf*, Nos. 17217-8-II, 18256-4-II, 19052-4-II (Wash. Ct. App. June 28, 1996). The case was remanded for further proceedings. We concluded that:

> Because one main issue at trial was whether Kauzlarich should be the residential parent, the trial court's personal knowledge about Kauzlarich's possible death threats against the children necessarily concerned a disputed evidentiary fact. Thus, under CJC 3(D)(1), the trial court should have disqualified itself.

*Kauzlarich v. Adolf*, slip op. at 8.

Yarbrough filed his first motion for summary judgment on January 10, 1997. Kauzlarich requested a continuance of the motion in order to depose court personnel, including judges. Judge Van Deren considered the motion, denied the request for a continuance, and denied the motion for summary judgment. Judge Van Deren stated that the defendant could renew the motion for summary judgment later. Judge Van Deren partially recused herself from the case, stating that a visiting judge would preside over discovery. She left open the possibility for consideration of factors that "might or might not mitigate for or against anyone from this county or me from this county hearing the

case." Report of Proceedings (Apr. 18, 1997) at 3. Judge Van Deren officially fully recused herself in May 1998 and filed a request for reassignment to a visiting judge.

Yarbrough and Abbott, the guardian ad litem, testified in declarations that Adolf expressed serious concerns for her own safety and for threats that Kauzlarich had conveyed to their daughter. Kauzlarich's daughter, Rachael, stated in her declaration that Kauzlarich made statements to her and that she told her mother about the statements. She stated, "My father told me that 'this matter will shortly be over and you won't have to worry about your mother any more.'" Clerk's Papers at 711.

Yarbrough renewed his motion for summary judgment on June 15, 1998. Visiting Judge Haberly granted the motion and dismissed the case with prejudice. About a month after the summary judgment dismissal, Yarbrough brought a motion for attorney fees pursuant to RCW 4.24.510. Judge Haberly denied Yarbrough's motion and ruled that the Superior Court Administration is not an "agency" within the definition of the statute.

Kauzlarich appealed the summary judgment dismissal and Yarbrough separately appealed the denial of attorney fees. These two appeals were consolidated in this case.

## I. Summary Judgment

■ When reviewing an order of summary judgment, the appellate court engages in the same inquiry as the trial court. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact, and that the moving party is entitled to judgment as a matter of law. CR 56(c). The court must consider all facts submitted and all reasonable inferences from them in the light most favorable to the nonmoving party. *Wilson*, 98 Wn.2d at 437. The nonmoving party may not rely on speculation, argumentative assertions that unresolved fac-

tual issues remain, or having its affidavits considered at face value; after the moving party has submitted adequate affidavits, the burden shifts to the nonmoving party to set forth specific facts that sufficiently rebut the moving party's contentions and disclose the existence of a genuine issue of material fact. *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986). The court should grant the motion only if, from all the evidence, reasonable persons could reach but one conclusion. *Wilson*, 98 Wn.2d at 437. Although the parties attempt to create a conflict as to the appropriate standard of review, the above summary judgment standard is well established.

■ To prove his claim for defamation, Kauzlarich had to establish that: (1) Yarbrough's statement was false; (2) the statement was not privileged; (3) fault; and (4) the statement proximately caused damages. *Caruso v. Local No. 690 of Int'l Bhd. of Teamsters*, 100 Wn.2d 343, 352, 670 P.2d 240 (1983). Yarbrough submits that the trial court in this case properly granted summary judgment dismissal and asserts the defenses of absolute privilege, qualified privilege, statutory privilege, truth, and lack of evidence of proximate cause or fault. For the purposes of this analysis on privilege, we assume that Yarbrough made the statements alleged and that there was proximate cause. We need not address whether there was evidence that Yarbrough made any statements or, if he did, whether they damaged Kauzlarich.

A. Absolute Privilege

An absolute privilege or immunity is said to absolve the defendant of all liability for defamatory statements. *Bender v. City of Seattle*, 99 Wn.2d 582, 600, 664 P.2d 492 (1983). A qualified privilege, on the other hand, may be lost if it can be shown that the privilege has been abused. *Bender*, 99 Wn.2d at 600. Absolute privilege is usually confined to cases in which the public service and administration of justice require complete immunity. Legislatures in debate, judges and attorneys in preparation or trial of cases, statements of witnesses or parties in judicial proceedings, and statements

of executive or military personnel acting within the duties of their offices are frequently cited examples. *Bender*, 99 Wn.2d at 600. Defamatory communications made by a party or counsel in the course of a judicial proceeding are absolutely privileged if they are pertinent or material to the redress or relief sought. *McNeal v. Allen*, 95 Wn.2d 265, 267, 621 P.2d 1285 (1980); *accord* RESTATEMENT (SECOND) OF TORTS §§ 586-87, § 586 cmt. c (1977).

We do not address whether there is an absolute privilege or immunity because we hold that there is a qualified privilege and a statutory privilege that cover this situation.

## B. Qualified Privilege

 Yarbrough asserts that his statements, even if defamatory, were conditionally privileged. A qualified or conditional privilege protects a speaker from liability for an otherwise defamatory statement, unless it can be shown that the privilege was abused. *See Bender*, 99 Wn.2d at 600. We hold that a qualified privilege will adequately protect attorneys and citizens who inform the court of security concerns. We view this function as important enough to afford such individuals a qualified privilege; thus, the standard of proving abuse of the privilege must necessarily be high. *See Bender*, 99 Wn.2d at 601.

The Supreme Court has defined qualified or conditional privilege:

> On certain occasions one is qualifiedly or conditionally privileged to publish false and defamatory matter of another and is not liable therefor, provided such privilege is not abused. Facts contained in such communication need not be true, if published without malice, in good faith, and in an honest belief of their truth arrived at after a fair and impartial investigation or upon reasonable grounds for such belief. These occasions arise when the publication is for the protection of the interest of the publisher, the recipient or a third person, persons sharing a common interest, family relationships, public interest. In connection with the last mentioned type of privilege the publication is privileged only when made to a public officer or a private citizen who is authorized to act.

*Owens v. Scott Publ'g Co.*, 46 Wn.2d 666, 674, 284 P.2d 296 (1955), *cert. denied*, 350 U.S. 968 (1956) (citations omitted). To be conditionally privileged, the statements must be made without malice, in good faith, and in an honest belief of their truth arrived at after a fair and impartial investigation or upon reasonable grounds for such belief. *Jolly v. Valley Publ'g Co.*, 63 Wn.2d 537, 542, 388 P.2d 139 (1964). But the privilege cannot be abused. Whether a statement, if made in good faith and without malice, is privileged is a question for the court. But if there is any evidence reasonably tending to show actual malice, the plaintiff has the right, notwithstanding the privileged character of the communication, to have the question of malicious excess of privilege submitted to the jury upon such evidence. *Jolly*, 63 Wn.2d at 543. Where the qualified privilege exists and the court can see that the language used will warrant no inference of malice, and there is no other proof of malice, it is the duty of the court to grant a nonsuit. *Jolly*, 63 Wn.2d at 543.

Yarbrough's statements most clearly fit under those situations where publication was for the protection of the publisher, recipient or third party and in the public interest. First, Yarbrough made his statements to obtain courtroom security for the protection of his client, court personnel, himself, and the public. Even if he mentioned death threats and his statement could be considered defamatory, the statements are conditionally privileged as statements for the protection of the publisher, recipient or third person. Second, Yarbrough made his statements for the public interest. To be in the public interest, the communication must be to a public officer or a private citizen authorized to act on the information. *Jolly*, 63 Wn.2d at 541. Superior Court Administration is authorized to provide and coordinate security in the courthouse. Here, Yarbrough made his statement to Superior Court Administration, and his statement is conditionally privileged.

Kauzlarich alleges, without authority, that because Yarbrough did not bring up the security concerns and

possible death threats in open court, he did not have the privilege of protection. It would be absurd, however, to force individuals concerned for their safety or the safety of others in a courtroom to wait until they arrive in the courtroom to request additional security. Kauzlarich also appears to contend that no privilege exists because Yarbrough abandoned and then actively concealed his concern for safety protection by taking no further action. These contentions do not go to the existence of a qualified privilege; instead, they would be relevant in determining whether Yarbrough abused the privilege.

█ A qualified privilege protects the maker from liability for a defamatory statement unless it can be shown that the privilege was abused. *See Bender*, 99 Wn.2d at 600. The burden of establishing an abuse of a qualified privilege rests on the defamed party, who must show by clear and convincing evidence the declarant's knowledge of falsity or his or her reckless disregard as to the falsity of a statement. *Bender*, 99 Wn.2d at 601; *Story v. Shelter Bay Co.*, 52 Wn. App. 334, 341-42, 760 P.2d 368 (1988).

Here, Kauzlarich asserts that Yarbrough abused his qualified privilege on several different grounds including that Yarbrough knew the statement was false, maliciously published the statement for personal gain, improperly had ex parte communications with the court administration and fraudulently withheld the communication. Although Kauzlarich presents an abundance of accusations of abuse, we hold that Kauzlarich presented no evidence that Yarbrough knew or recklessly disregarded the falsity of the statement about the death threats.[1]

Yarbrough refers to several declarations that support his claim that he did not abuse his qualified privilege. Yarbrough explained in his declarations that Adolf expressed serious concerns for her safety. Abbott, the guardian ad litem, testified that Adolf told him about serious

---

[1] Again, for the purposes of discussing the privilege, we assume without holding that Yarbrough made the statements about death threats and that the statements were false.

concerns she had for her safety and discussed death threats that Kauzlarich had made. Kauzlarich's daughter, Rachael, stated in her declaration that Kauzlarich made statements to her and that she told her mother about the statements. She stated, "My father told me that 'this matter will shortly be over and you won't have to worry about your mother any more.' " Clerk's Papers at 711. Yarbrough could reasonably interpret Kauzlarich's statements as a threat after Adolf explained her concern and he could reasonably believe that Kauzlarich presented a danger to those in the courtroom.

Kauzlarich does not squarely rebut his daughter's declaration concerning his possible threat or Yarbrough's and Abbott's declarations, which state that Adolf told them about the threats. Kauzlarich merely responds that Adolf's safety concerns are immaterial. To the contrary, the fact that Adolf expressed safety concerns from what she may have interpreted as a threat is highly relevant as to whether Yarbrough had a reasonable basis to believe Kauzlarich was dangerous and had made threats or whether he knew the statement was false or acted with reckless disregard.

▇ Kauzlarich is incorrect in stating that improper ex parte communications equate maliciousness for a defamation suit. He provides no authority to support this assertion. Further, Kauzlarich mischaracterizes this court's previous holding in the underlying case, *Kauzlarich v. Adolf*, by asserting that it shows that Yarbrough's communication to the Superior Court Administration was improper. To the contrary, we held that the *undisclosed* communication between the two judges, Judge Sauriol and Judge Sebring, was improper. We did not comment on Yarbrough's communication to the court administration. Moreover, we stated:

> Our holding should not be interpreted as limiting judges' ability to discover, from any source, information regarding security risks in the courtroom or their ability to take appropriate measures to prevent risk to the parties, to witnesses, to court personnel, or to on-lookers. Nor do we take the position

that all security measures need be revealed to the parties. Our holding today is narrow.

*Kauzlarich v. Adolf*, slip op. at 9.

Kauzlarich also repeatedly argues that Yarbrough's failure to seek a restraining order or protection order for Adolf through normal legal channels shows that Yarbrough acted maliciously. Kauzlarich contends that had Yarbrough's motivation been to protect his client, he would have presented his statements in court and not abandoned his statements, or obtained a restraining order pursuant to law. But no evidence shows Yarbrough's motivation was anything other than requesting security for the courtroom.

Kauzlarich further argues that Yarbrough abused his qualified privilege because Yarbrough made inconsistent statements, falsified declarations, relied on false declarations in argument, and concealed his ex parte communication with the court concerning Kauzlarich's possible dangerousness and threats. Kauzlarich, however, does not adequately explain any inconsistencies in Yarbrough's statements. And Kauzlarich does not support his allegations of falsifying declarations or memoranda. Even if Yarbrough unfairly withheld information about his ex parte communication with Superior Court Administration, this does not show that he made the statements with malice. Yarbrough's actions after he made the statements do not show malice at the time the statements were made. Simply because Yarbrough withheld the fact that he disclosed his concern to Superior Court Administration over possible death threats from Kauzlarich does not show that the statement itself was made with malice or reckless disregard for the truth. We conclude that such inferences do not rise to the level of clear and convincing evidence of malice or abuse of a qualified privilege.

Kauzlarich accuses Yarbrough of purposefully spreading the defamatory statements for the purposes of securing an advantage for his client in the upcoming custody trial and securing significant fees for himself. He states that Yarbrough had a financial motivation to obtain a favorable

ruling from the judge and was awarded thousands of dollars in attorney fees. Such circumstantial evidence of a possible malicious motive is a far cry from proving with clear and convincing evidence that Yarbrough knew his statement was false or was reckless in regard to its truth or falsity.

■■ In addition, instead of presenting evidence that Yarbrough knew or should have known that Kauzlarich did not make any such statements or threats, Kauzlarich merely states that no threats were made. Unsupported allegations of malice, where a plaintiff alleges mere falsity and possible corrupt motives, and no other bad faith activity on the part of the defendant, would make determination of the existence of a qualified privilege by the court of little or no importance and force every defamation case to trial. *Cf. Gem Trading Co. v. Cudahy Corp.*, 92 Wn.2d 956, 961, 603 P.2d 828 (1979). Qualified privileges are designed to defeat the initial presumption of liability raised by publication of a false defamatory statement. *Gem Trading*, 92 Wn.2d at 961. If the allegedly defamed plaintiff can avoid summary judgment once a communication is found qualifiedly privileged merely by reasserting the statement's false character, the existence of the privilege is of no consequence. *Gem Trading*, 92 Wn.2d at 961.

■ The burden is on the plaintiff to prove abuse of the privilege. Although at summary judgment all facts will be considered in a light most favorable to the opposing party, facts which will fulfill that burden if uncontroverted must be asserted by plaintiff. *Gem Trading*, 92 Wn.2d at 961. Proof of falsity and possible ulterior motives alone, even if accepted by the jury, cannot overcome the privilege in this case so as to require that Kauzlarich's claim for defamation be submitted to the jury. To show that Yarbrough abused his qualified privilege through the allegedly defamatory statement and to thus avoid summary judgment on that ground, Kauzlarich needed to plead and prove by affidavit or otherwise with clear and convincing evidence that Yarbrough abused the qualified privilege in making his statement.

Kauzlarich has not met this burden. We hold that no rational trier of fact could find by clear and convincing evidence that the statements in question were published with malice or reckless disregard of their truth or falsity. Therefore, we hold that Kauzlarich has not established that Yarbrough abused the qualified privilege in making his statement and, thus, summary judgment was proper.

## II. RCW 4.24.510

Yarbrough argues that he is protected by a privilege under RCW 4.24.510. The trial court determined that he was not entitled to attorney fees under this statute. We hold that this statute is applicable and that Yarbrough is entitled to attorney fees to be determined by the trial court upon remand.

Both parties cite the unamended version of this statute. In 1999, the legislature rewrote this statute, which previously read:

> A person who in good faith communicates a complaint or information to any agency of federal, state or local government regarding any matter reasonably of concern to that agency shall be immune from civil liability on claims based upon the communication to the agency. A person prevailing upon the defense provided for in this section shall be entitled to recover costs and reasonable attorneys' fees incurred in establishing the defense.

Former RCW 4.24.510 (1989). The current version of RCW 4.24.510 provides:

> A person who in good faith communicates a complaint or information to any agency of federal, state, or local government, or to any self-regulatory organization that regulates persons involved in the securities or futures business and that has been delegated authority by a federal, state, or local government agency and is subject to oversight by the delegating agency, is immune from civil liability for claims based upon the communication to the agency or organization regarding any matter reasonably of concern to that agency or organization. A

person prevailing upon the defense provided for in this section shall be entitled to recover costs and reasonable attorneys' fees incurred in establishing the defense.

The changes in the statutory language do not materially affect our analysis of this issue.[2]

█ A superior court has no power to award attorney fees unless authorized by statute, contract, or on equitable grounds. *Bongirno v. Moss*, 93 Wn. App. 654, 658, 969 P.2d 1118 (1999). Yarbrough argues that the trial court should have awarded him statutory attorney fees under RCW 4.24.510 as a prevailing party when it dismissed the suit. Yarbrough claimed this statutory privilege in response to Kauzlarich's claims of defamation, fraudulent concealment and negligent or intentional infliction of emotional distress arising out of Yarbrough's statements to the Pierce County Superior Court Administration. The trial court denied Yarbrough attorney fees, concluding that the Superior Court Administration was not a "agency" within the meaning of the statute.

█ Courts have the ultimate authority to determine the meaning and purpose of a statute. *State v. Wilson*, 125 Wn.2d 212, 216, 883 P.2d 320 (1994). Interpretation and construction of a statute is a question of law to be reviewed de novo. *Lumberman's of Wash., Inc. v. Barnhardt*, 89 Wn. App. 283, 286, 949 P.2d 382 (1997). The reviewing court's obligation is to give effect to the intent of the legislature. Review begins with the plain language of the statute. *Lacey Nursing Ctr., Inc. v. Dep't of Revenue*, 128 Wn.2d 40, 53, 905 P.2d 338 (1995). Undefined statutory terms are given their usual and ordinary meaning. *Nationwide Ins. v. Williams*,

---

[2] Although the parties do not discuss the amendments to the statute, the amendments apply to this pending case because the statute relates to a remedy, the reimbursement of attorney fees, and does not affect a substantive or vested right. *See In re F.D. Processing, Inc.*, 119 Wn.2d 452, 462-63, 832 P.2d 1303 (1992). A statute will be deemed to apply retroactively if it is remedial in nature and retroactive application would further its remedial purpose. *Macumber v. Shafer*, 96 Wn.2d 568, 570, 637 P.2d 645 (1981). But these changes do not affect this case because the addition of the "self-regulatory organization involved in the securities or futures business" does not limit the types of agencies that are included in the meaning of "any agency of federal, state, or local government" in the statute.

71 Wn. App. 336, 342, 858 P.2d 516 (1993), *review denied,* 123 Wn.2d 1022 (1994).

RCW 4.24.510 requires that the declarant communicate the complaint or information "to any agency of federal, state or local government," but the statute does not further define "agency." Courts have discussed this statute in relation to communications with the police and law enforcement, *Tham Thi Dang v. Ehredt,* 95 Wn. App. 670, 977 P.2d 29, *review denied,* 139 Wn.2d 1012 (1999), and communications with officials of a land development division and county executive. *Gilman v. MacDonald,* 74 Wn. App. 733, 875 P.2d 697, *review denied,* 125 Wn.2d 1010 (1994). But no Washington cases have addressed whether judicial offices such as the Superior Court Administration are included as an "agency" under this statute.

Although the term "agency" could be broad enough to cover court administration offices, Kauzlarich argues that "agency" does not include the judicial branch of government, unless specifically delineated. Kauzlarich asserts that *Nast v. Michels,* 107 Wn.2d 300, 730 P.2d 54 (1986), supports this proposition, but *Nast* concerned a statute with a definitional section that defined "agency," RCW 42.17.020. It is inapposite to this discussion.

 We hold that "agency" is ambiguous under this statute. If a statute is ambiguous, we should look to other sources of legislative intent. *State v. Bash,* 130 Wn.2d 594, 601, 925 P.2d 978 (1996). Legislative intent is determined from the language of the act as a whole in terms of its object and purpose. *Kucher v. Pierce County,* 24 Wn. App. 281, 284, 600 P.2d 683 (1979).

 The statute provides civil immunity to a person communicating in good faith a complaint or information regarding any matter of concern to that agency. The purpose of the act is set out in RCW 4.24.500.[3] The legislature

---

[3] RCW 4.24.500 provides:

Information provided by citizens concerning potential wrongdoing is vital to effective law enforcement and the efficient operation of government. The

granted statutory immunity for the purpose of removing a deterrent to citizens who provide information concerning potential wrongdoing to federal, state or local agencies. RCW 4.24.500. The legislature found this was "vital to effective law enforcement and the efficient operation of government." RCW 4.24.500. The operation of the court is such a governmental process that demands protection. Further, much of the business of the courts concerns effective law enforcement. It would be odd indeed if all other operations of government were protected, but not this arm. If the legislature intended that it be limited to "administrative agencies," it could have easily added "administrative." It did not. Security in the courtroom is vital to the administration of justice and, thus, we hold that "agency" in this statute was intended to include the courts.

▪ In this case, Yarbrough gave information to the Superior Court Administration in regard to his request for security in the courtroom during the trial that involved Kauzlarich. Yarbrough allegedly provided information about Kauzlarich's death threats during this communication. Given the legislative purpose and history, RCW 4.24.500 applies in this case. Thus, Yarbrough's request for security in the courtroom to the Superior Court Administration was a privileged communication under the statute.

▪ RCW 4.24.510 requires that for the statutory privilege to apply the person must communicate the information in good faith. Division One has held "where RCW 4.24.510 is raised as a defense in a common law defamation action, the determination of whether a party has prevailed upon the defense, i.e., acted in good faith, is to be made using the same principles that govern claims of abuse of a qualified

legislature finds that the threat of a civil action for damages can act as a deterrent to citizens who wish to report information to federal, state, or local agencies. The costs of defending against such suits can be severely burdensome. The purpose of RCW 4.24.500 through 4.24.520 is to protect individuals who make good-faith reports to appropriate governmental bodies.

privilege in common law defamation actions." *Gilman*, 74 Wn. App. at 738.[4]

A qualified privilege protects the maker of the statement from liability for an otherwise defamatory statement unless the defamed party can show the privilege was abused by showing clear and convincing evidence that the declarant had knowledge of the falsity or a reckless disregard as to the falsity of the statement. *Bender*, 99 Wn.2d at 600-01; *Lillig v. Becton-Dickinson*, 105 Wn.2d 653, 658, 717 P.2d 1371 (1986). Following the court in *Gilman*, we hold that "where a defendant in a defamation action claims immunity under RCW 4.24.510 on the ground his or her communications to a public officer were made in good faith, the burden is on the defamed party to show by clear and convincing evidence that the defendant did not act in good faith. That is, the defamed party must show, by clear and convincing evidence, that the defendant knew of the falsity of the communications or acted with reckless disregard as to their falsity." *Gilman*, 74 Wn. App. at 738-39.

As we explained while discussing the qualified privilege, Kauzlarich has failed to produce clear and convincing evidence that Yarbrough acted with knowledge of the falsity of his statements to Superior Court Administration or in reckless disregard as to their falsity. Thus, Yarbrough meets the requirement of good faith in RCW 4.24.510.

■■ ■■ Yarbrough is covered under this statute. This statute bars all civil claims, including Kauzlarich's claims of defamation, fraudulent concealment, and negligent or intentional infliction of emotional distress.[5] The trial court

---

[4] In *Gilman*, the appellate court rejected the use of a negligence standard to determine whether the defendant acted in good faith and rejected the trial court's decision that the defendant had a duty to make a fair and impartial investigation and to have reasonable grounds to believe the truth of his statements. *Gilman*, 74 Wn. App. at 737-39. Instead of the negligence standard, the appellate court held that where RCW 4.24.510 is raised as a defense, the determination of whether a party has prevailed upon the defense, i.e., acted in good faith, is to be made using the same principles that govern claims of abuse of a qualified privilege in common law defamation actions. *Gilman*, 74 Wn. App. at 738.

[5] Additionally, Kauzlarich provides insufficient argument for his claims of fraudulent concealment and negligent or intentional infliction of emotional distress. Passing treatment of an issue or lack of reasoned argument is insufficient

erred in holding that the statute was inapplicable. Yarbrough is entitled to attorney fees from the proceeding in the trial court. On remand, the superior court shall determine reasonable attorney fees.

## III. Recusal

■ Kauzlarich contends that Judge Van Deren, who was originally assigned this case, abused her discretion by recusing herself sua sponte without showing actual bias. The Code of Judicial Conduct (CJC) provides that "[j]udges should disqualify themselves in a proceeding in which their impartiality might reasonably be questioned." CJC Canon 3(D)(1). Recusal is within the sound discretion of the court. *State v. Bilal*, 77 Wn. App. 720, 893 P.2d 674, *review denied*, 127 Wn.2d 1013 (1995).

■ We recently discussed the proper exercise of a judge's discretion to recuse him or herself in *State v. Graham*, 91 Wn. App. 663, 960 P.2d 457 (1998). In *Graham*, we addressed when a judge's recusal provides manifest necessity for a mistrial so that double jeopardy does not apply. We explained that the " 'CJC recognizes that where a trial judge's decisions are tainted by even a mere suspicion of partiality, the effect on the public's confidence in our judicial system can be debilitating.' " *Graham*, 91 Wn. App. at 669 (quoting *Sherman v. State*, 128 Wn.2d 164, 205, 905 P.2d 355 (1995)). " 'The test for determining whether the judge's impartiality might reasonably be questioned is an objective test that assumes that "a reasonable person knows and understands all the relevant facts." ' " *Graham*, 91 Wn. App. at 669 (quoting *Sherman*, 128 Wn.2d at 206). We noted that judges should be encouraged "to view the Canons of Judicial Conduct in a broad fashion and to err, if

to merit judicial consideration. *State v. Johnson*, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992); *Smith v. King*, 106 Wn.2d 443, 451-52, 722 P.2d 796 (1986). Instead of making a fully reasoned argument, Kauzlarich simply incorporates his trial briefs by reference. But trial court briefs cannot be incorporated into appellate briefs by reference. *U.S.W. Communications, Inc. v. Wash. Utils. & Transp. Comm'n*, 134 Wn.2d 74, 111-12, 949 P.2d 1337 (1997). We would affirm summary judgment on this basis alone if we were to review these issues substantively.

at all, on the side of caution." *Graham*, 91 Wn. App. at 670.

In this case, in a court proceeding on February 7, 1997, Judge Van Deren specifically noted:

> The appearance of fairness for any judge in Pierce County to try to rule on those discovery matters is of grave concern to me, and I feel certain that should Mr. Kauzlarich ultimately not prevail in this matter or should he prevail in this matter, one party or the other is going to feel that the relationship of this judge or any judge from Pierce County couldn't help but affect its outcome.

Report of Proceedings (Feb. 7, 1997) at 15-16. Judge Van Deren is a judge in the Pierce County Superior Court where many judges and court personnel were witnesses in this case. While this fact may not have resulted in actual prejudice, it did raise a reasonable question as to Judge Van Deren's impartiality. Thus, Judge Van Deren could correctly conclude that the Canons of Judicial Conduct compelled her to recuse herself.

For example, Kauzlarich asserts that where, as here, no litigant makes a request for recusal, the only reason left for recusal is actual bias under RCW 4.12.040. He argues that the burden is on the judge to reveal any actual bias which he or she knows exists. Kauzlarich, however, essentially argues without authority that judges have to meet the same requirements that parties have for proof of grounds for disqualification. Kauzlarich misconstrues the law regarding when judges may sua sponte recuse themselves. Even though he quoted CJC Canon 3(D), Kauzlarich ignores its provisions, which offer several nonexclusive reasons, only one of which is personal bias or prejudice, why judges might disqualify themselves.[6]

---

[6] CJC Canon 3(D) states:

(1) Judges should disqualify themselves in a proceeding in which their impartiality might reasonably be questioned, including but not limited to instances in which:

(a) the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(b) the judge previously served as a lawyer or was a material witness in the

Kauzlarich continues his challenge of the recusal by citing the Washington Constitution article IV, section 28 and RCW 2.08.080, which both require:

> Every judge of a superior court shall, before entering upon that duties of his office, take and subscribe an oath that he will . . . faithfully and impartially discharge the duties of judge to the best of his ability . . . .

We hold that Kauzlarich has not presented any evidence to show that Judge Van Deren did not faithfully and impartially discharge her duties as judge. Furthermore, there is no evidence that Judge Van Deren's recusal in any way delayed the case, denied Kauzlarich due process, or violated judicial canons. As Yarbrough submits, Kauzlarich's real complaint is Visiting Judge Haberly's unfavorable ruling.

Kauzlarich misconstrues the record and asserts that at the second hearing on April 18, 1997, Judge Van Deren ruled that she had no personal bias or other basis for disqualification. Kauzlarich claims without authority or reasoned argument that Judge Van Deren was estopped from summarily withdrawing from the case at a later date without comment where there was no change of circumstances.

Contrary to Kauzlarich's argument, Judge Van Deren did not rule that she would have no basis for disqualification in

---

matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or such lawyer has been a material witness concerning it;

(c) the judge knows that, individually or as a fiduciary, the judge or the judge's spouse or member of the judge's family residing in the judge's household, has an economic interest in the subject matter in controversy or in a party to the proceeding, or is an officer, director or trustee of a party or has any other interest that could be substantially affected by the outcome of the proceeding, unless there is a remittal of disqualification;

(d) the judge or the judge's spouse or member of the judge's family residing in the judge's household, or the spouse of such a person:

(i) is a party to the proceeding, or an officer, director, or trustee of a party;

(ii) is acting as a lawyer in the proceeding;

(iii) is to the judge's knowledge likely to be a material witness in the proceeding.

the case nor did she rule that she would not later recuse herself. In fact, Judge Van Deren explicitly noted that she might recuse herself in the future depending on the circumstances of the case.[7] Later, apparently finding her impartiality could be reasonably questioned according to CJC Canon (3)(D), she recused herself. No further comment was necessary from the judge because she had already listed her reasons for the recusal, which showed that the recusal was in good faith. Notably, we have no evidence of bad faith or that Judge Van Deren had knowledge of a conflict before she fully recused herself.

Therefore, we hold that Judge Van Deren's sua sponte recusal was not an abuse of discretion.

Affirmed in part, reversed in part, and remanded for calculation of attorney fees.

ARMSTRONG, C.J., and HUNT, J., concur.

Review denied at 144 Wn.2d 1007 (2001).

---

[7] In clarifying her initial partial recusal on April 18, 1997, Judge Van Deren stated in court that "the confusion is whether I have recused in the entire case or recused on the discovery of the matters relating to the Superior Court[.]" Report of Proceedings (Apr. 18, 1997) at 2. She then clarified that at that time she was recusing herself only from the discovery matters. Judge Van Deren stated:

[W]hen I made the ruling originally, I was thinking that I would recuse entirely from the case. And then, frankly, I got the material from both counsel. I read Mr. Kauzlarich's memo. And I think he is right. I think that I don't really have grounds to recuse on the entire case but I do on the discovery.

And so that's my position, that I will not handle any discovery. . . . And I thought that after you have been able to complete your discovery and work on that, we would see where we were and what factors might or might not mitigate for or against anyone from this county or me from this county hearing the case.

*Id.* at 2-3. In these comments, Judge Van Deren explicitly noted that she might recuse herself in the future depending on the circumstances of the case.