# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>  Respondent,<br><br>  v.<br><br>ALEXANDER MARTIN SCORDAMAGLIA,<br><br>  Appellant. | No. 78210-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br><br>FILED: November 12, 2019 |

APPELWICK, J. — Alexander Scordamaglia appeals the judgment and sentence entered upon his conviction on retrial for possession of a controlled substance (methamphetamine) while on community custody. He assigns error to the trial court's denial of his CrR 8.3(b) and CrR 4.7 motions to dismiss for governmental mismanagement and discovery violations. Scordamaglia raised valid concerns regarding cumulative prosecutorial mismanagement below. However, he abandoned this basis for review when he failed to brief the issues and seek a ruling from the trial court. He further claims errors based on double jeopardy, allowing the testimony of a previously undisclosed witness, and admitting drug evidence. These issues do not provide a basis for reversal. We affirm.

## FACTS

On October 5, 2017, Officer Mark Smith of the Everett Police Department responded to a call for assistance regarding a welfare check for a man who appeared to be passed out on the sidewalk. Officer Smith recognized the man as Alexander

Scordamaglia. Upon contact, Scordamaglia declined medical attention and provided his name and date of birth. Officer Smith conducted a records check and learned that Scordamaglia had an outstanding warrant. He arrested Scordamaglia and read his Miranda[1] warnings. Scordamaglia stated that he understood his rights and that he did not wish to speak with police.

During the subsequent search incident to arrest, Officer Smith found a plastic "baggie" containing a crystalline substance in Scordamaglia's jacket pocket. Based on his training and experience, Officer Smith believed the substance was methamphetamine. Officer Smith booked Scordamaglia into jail and returned to the police precinct to process the evidence. He weighed the substance and baggie, and reported that together they weighed 0.9 grams. Officer Smith testified that he photographed the suspected contraband and uploaded the photographs into a digital vault maintained by the police department. He then placed the evidence in a sealed and marked envelope and impounded it in the secured police department property room.

On October 10, 2017, the State filed the charge in Everett District Court pursuant to CrRLJ 3.2.1(g).[2] On October 23, 2017, the State charged Scordamaglia in Snohomish County Superior Court with one count of possession of a controlled substance committed while on community custody. At the October 24 arraignment hearing, omnibus was set for November 22 and trial was set on December 8.

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] CrRLJ 3.2.1(g) permits the State to file a felony complaint in district court to conduct a preliminary hearing to determine probable cause, thereby tolling the defendant's speedy trial rights for 30 days.

On November 22, the prosecutor asked the State crime laboratory to test the suspected contraband. Dr. David Northrup tested the substance and reported that it contained methamphetamine. On December 7, the State received the results and provided them to defense counsel.

Trial commenced on December 11, 2017. The defense moved in limine to suppress the drug test results under CrR 4.7 on the ground that the State waited until omnibus to submit the substance to the crime lab for testing and provided the results just one day before trial was scheduled to begin. At oral argument, defense counsel further argued that the delay warranted dismissal under CrR 8.3(b). The State explained that "the crime lab does have a backlog and it asked that we not send samples for testing until we have a confirmed court date, which we did not have until the omnibus hearing." After the State asserted that the proper remedy would be a continuance, defense counsel moved for dismissal pursuant to CrR 4.7. The defense further asserted that the State mismanaged the case by filing charges in district court without conducting a preliminary hearing.

The court ruled that it would not exclude the drug test results for late discovery, noting that there was still 14 days in speedy trial. The court reasoned that the appropriate remedy would be a continuance to allow the defense to test the suspected contraband. The court reserved ruling on the CrR 8.3 motion to dismiss.

Following opening statements, the State called Officer Smith as its first witness. During direct examination, Officer Smith testified that Scordamaglia invoked his right to remain silent:

Q: Okay. And so after you searched him, then what did you do?

A. Once he was searched, I advised him of his constitutional rights.

Q. And how did you do that?

A. By placing him in the back of my vehicle and I used my Everett Police Department-issued <u>Miranda</u> warning's [sic] card which I keep in my notepad and I read him read for -- excuse me, read it word for word, the <u>Miranda</u> warnings, and then I asked him if he understood and then I asked him if he desired to talk with me about it --

Q. Okay.

A. -- his current situation, which he declined.

(Underline added.) Because Officer Smith impermissibly commented on Scordamaglia's exercise of his constitutional right to remain silent, the defense objected and requested a mistrial. The State agreed to the request and the court granted it. The defense then moved to dismiss based on double jeopardy and prosecutorial mismanagement. The trial court denied the motion.

Retrial commenced on December 18. During Officer Smith's testimony, the State moved to admit the plastic baggie and substance into evidence. Defense counsel objected, noting that the envelope containing the suspected contraband bore initials showing it had been opened and resealed on October 11 by another individual. Upon further questioning, it came to light that the photographs submitted to the defense during discovery were taken by Detective Steve Paxton, not Officer Smith. The prosecutor was unaware of the discrepancy. Defense counsel asserted that the State could not establish the chain of custody without Detective Paxton's testimony.

The following morning, the State asked to call Detective Paxton as a witness to complete the foundation requirements for chain of custody. Outside the presence of the jury, Detective Paxton testified that he received a "need for trial" request on October 11

from the prosecutor's office for photographs in Scordamaglia's case. He did not find any photographs when he accessed the system, so he assumed none existed. He therefore checked the evidence out of the property room, photographed it, and reimpounded it. He did not think he needed to notify anyone because the digital vault automatically creates an audit trail. Officer Smith testified that he believed he uploaded the photographs, but conceded there might have been a technical glitch or that they might be entered under the wrong case number.

Defense counsel then brought a CrR 8.3(b) motion to dismiss for cumulative prosecutorial mismanagement of the entire case to that date, including the missing photographs and the late addition of a witness. In the alternative, the defense moved for a mistrial or to suppress Detective Paxton's testimony. The court noted that the motion to dismiss would now be dependent not just on chain of custody, but also on the possible loss of evidence and failure to disclose until the middle of trial. The court therefore reserved ruling on the motion to dismiss "for a full-blown hearing with briefing on both sides." The court ruled that it would allow Detective Paxton to testify regarding chain of custody but gave the defense the option of continuing the case for one day to interview Detective Paxton, or for a mistrial to investigate the missing photographs and reformulate trial strategy.

The defense initially opted for a mistrial coupled with Scordamaglia's release from custody. However, after a short recess, the defense withdrew its motion for mistrial and trial proceeded. Both Officer Smith and Detective Paxton testified in open court regarding the photographs. The State again moved to admit the plastic baggie and substance into

evidence. This time, defense counsel did not object. The court admitted Dr. Northrup's report over the defense's previous objection regarding timeliness.

The court granted the defense's request for a missing evidence instruction for Officer Smith's photographs. The jury returned a verdict of guilty. After the court excused the jury, defense counsel asked whether the court would hear the pending CrR 8.3(b) motion "if the Defense decides to file it and brief it?" The court set a hearing on January 26, 2018. However, defense counsel did not file or brief the motion, and the court never ruled on the motion. On January 31, 2018, the court sentenced Scordamaglia imposed a low end standard range sentence of 12 months plus one day confinement and 12 months community custody. Scordamaglia appeals.

DISCUSSION

I.  Substance Testing Delay

Scordamaglia first argues that the trial court erred in denying his CrR 8.3(b) motion to dismiss for the State's violation of its discovery obligations. Specifically, he contends the prosecutor committed misconduct by filing the case in district court without conducting a preliminary hearing and waiting until the omnibus hearing to ask the state crime lab to test the suspected contraband. He asserts that these actions prejudicially forced him to choose between proceeding to trial with counsel who was inadequately prepared to address the test results or accepting further delays in trial.

CrR 8.3(b) states that "[t]he court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial." "Governmental misconduct need not be evil or

dishonest. Simple mismanagement is sufficient." State v. Kone, 165 Wn. App. 420, 433, 266 P.3d 916 (2011). "The use of CrRLJ 8.3(b) to punish a discovery violation is limited because the rule expressly contemplates dismissal, the most severe sanction available to trial courts." State v. Salgado-Mendoza, 189 Wn.2d 420, 429, 403 P.3d 45 (2017). We review a trial court's denial of dismissal under CrR 8.3(b) for abuse of discretion. State v. Oppelt, 172 Wn.2d 285, 297, 257 P.3d 653 (2011).

The State contends that Scordamaglia knowingly waived CrR 8.3(b) as a basis for review of this claim by consciously abandoning it below. We agree. Waiver is "'an intentional relinquishment or abandonment of a known right or privilege.'" State v. Harris, 154 Wn. App. 87, 95, 224 P.3d 830 (2010) (quoting State v. Riley, 19 Wn. App. 289, 294, 576 P.2d 1311 (1978)). "Even where a constitutional error is manifest, it can still be waived if the issue is deliberately not litigated during trial."[3] State v. Hayes, 165 Wn. App. 507, 515, 265 P.3d 982 (2011). See also Johnson v. United States, 318 U.S. 189, 199-200, 63 S. Ct. 549, 87 L. Ed. 704 (1943); State v. Valladares, 99 Wn.2d 663, 671-72, 664 P.2d 508 (1983); State v. Walton, 76 Wn. App. 364, 370, 884 P.2d 1348 (1994).

Here, the defense initially moved pursuant to CrR 4.7 "to exclude any evidence not provided by the omnibus date." However, during oral argument, the defense moved for dismissal on several possible grounds, including CrR 8.3(b), CrR 4.7, and CrRLJ 3.2.1(g). The court, noting that the parties had not yet briefed these issues, expressly reserved ruling on the motion to dismiss. The court stated that it would even be willing to hear the motion after trial, if necessary.

---

[3] Although we generally will not consider issues raised for the first time on appeal, an exception exists for manifest errors affecting a constitutional right. RAP 2.5(a)(3). Scordamaglia does not assert that RAP 2.5(a)(3) compels appellate review of this issue.

After the jury entered a verdict of guilty, defense counsel asked whether the court would hear the pending motion to dismiss "if the Defense decides to file it and brief it." The court agreed and set a hearing for January 26, 2018. However, for unknown reasons, defense counsel chose not to submit briefing and the court never ruled on it. We therefore decline to review Scordamaglia's claim that abusing the preliminary hearing mechanism and delaying the substance test warranted dismissal under CrR 8.3(b).

The State also asserts that Scordamaglia waived any claim that the trial court erred in denying his motion to suppress the drug evidence or to dismiss his case on the basis of CrR 4.7 because he failed to provide reasoned argument. We agree.

CrR 4.7(h)(7)(i) provides that the trial court may grant a continuance, dismiss the action, or enter another appropriate order as a sanction for failure to comply with a discovery order. "A trial court exercises its discretion when deciding how to deal with a discovery violation." State v. Barry, 184 Wn. App. 790, 796, 339 P.3d 200 (2014). At trial, Scordamaglia argued for suppression of the drug evidence or dismissal based on CrR 4.7(a)(1)(iv) (requiring the prosecutor to disclose "no later than the omnibus hearing . . . any reports or statements of experts made in connection with the particular case") and CrR 4.7(d) (requiring the prosecutor to seek disclosure of discoverable information in the knowledge, possession, or control of others). The court ruled that it would not exclude the drug test results for late discovery, noting that there was still 14 days in speedy trial. The court reasoned that the appropriate remedy would be a continuance to allow the defense to test the suspected contraband, but noted that the defense did not want that.

On appeal, Scordamaglia cites CrR 4.7 as a basis for dismissal. But, he provides no substantive argument regarding whether the trial court abused its discretion by

denying his motion to suppress evidence of the drug test or to dismiss for a CrR 4.7 discovery violation. RAP 10.3(a)(6) directs each party to supply, in its brief, "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." "'[P]assing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.'" West v. Thurston County, 168 Wn. App. 162, 187, 275 P.3d 1200 (2012) (quoting Holland v. City of Tacoma, 90 Wn. App. 533, 538, 954 P.2d 290 (1998)). We decline to address it.

## II. Cumulative Mismanagement

Scordamaglia asserts that the court erred in denying his CrR 8.3(b) motion to dismiss for cumulative prosecutorial mismanagement based on (1) abuse of the preliminary hearing process under CrRLJ 3.2.1, (2) waiting until omnibus to ask the crime lab to test the substance, (3) failing in the first trial to prevent testimony on the defendant's right to remain silent, (4) failing to discover that Officer Smith's photographs were missing until the middle of the second trial, and (5) failing to notice that the photographs in evidence were taken by Officer Paxton and attendant failure to name him as a witness. Scordamaglia contends that this systematic misconduct impacted his speedy trial rights and prejudiced his right to be represented by adequately prepared counsel.

Scordamaglia raises valid concerns regarding pervasive mismanagement of what should have been a simple and straightforward case. But, the trial court expressly reserved ruling on his motion to dismiss for cumulative mismanagement, including the missing photographs and late addition of a witness, to allow the parties to fully brief the issues. As discussed above, the court scheduled a posttrial hearing regarding the

pending CrR 8.3(b) motion to dismiss, but defense counsel took no further action and the trial court never ruled on it. We therefore deem it waived.

## III. Double Jeopardy

Scordamaglia contends that double jeopardy barred retrial after the court granted his motion for mistrial. Whether a retrial violates double jeopardy is a question of law reviewed de novo. State v. Jackman, 156 Wn.2d 736, 746, 132 P.3d 136 (2006). "The United States Constitution and the Washington State Constitution protect individuals from being twice put in jeopardy for the same offense." State v. Fuller, 185 Wn.2d 30, 33, 367 P.3d 1057 (2016) (citing U.S. CONST. amend. V; WASH. CONST. art. I, § 9.) "Besides prohibiting additional trials for the same offense after conviction or acquittal, double jeopardy also protects the right of the defendant to be tried by the jury he selected." State v. Juarez, 115 Wn. App. 881, 888, 64 P.3d 83 (2003). Jeopardy attaches after the jury is selected and sworn.[4] Id..

"Standards governing whether retrial is barred differ dramatically depending on whether the defendant requested the mistrial or whether the State sought a mistrial over the defendant's objection." State v. Robinson, 146 Wn. App. 471, 478, 191 P.3d 906 (2008). "Under the federal standard, a defendant's motion for mistrial removes any double jeopardy bar to retrial unless the governmental misconduct 'is intended to goad the defendant into moving for a mistrial.'" State v. Hopson, 113 Wn.2d 273, 278, 778 P.2d 1014 (1989) (internal quotation marks omitted) (quoting Oregon v. Kennedy, 456 U.S. 667, 680, 102 S. Ct. 2083, 72 L. Ed. 2d 416 (1982) (Kennedy I)).[5] "In contrast, a

---

[4] The parties do not dispute that jeopardy attached in this case.

[5] In State v. Kennedy, 295 Or. 260, 276, 666 P.2d 1316 (1983) (Kennedy II), the Oregon Supreme Court held that the state's constitution barred retrial "when improper

mistrial without the defendant's consent must be based on 'manifest necessity' in order to circumvent the double jeopardy prohibition." Robinson, 146 Wn. App. at 479 (quoting State v. Melton, 97 Wn. App. 327, 331, 983 P.2d 699 (1999). Consent to mistrial is not freely given where "the court or prosecutor acted in bad faith and by doing so put the defendant in the position of accepting either a mistrial or serious prejudice to his chances of acquittal." Juarez, 115 Wn. App. at 888 (citing State v. Rich, 63 Wn. App. 743, 747, 821 P.2d 1269 (1992)).

It is constitutional error for a police witness to testify that a defendant invoked his or her right to remain silent or for the State to purposefully elicit such testimony. State v. Romero, 113 Wn. App. 779, 790, 54 P.3d 1255 (2002). Here, the prosecutor admitted that she neglected to instruct Officer Smith to avoid commenting on Scordamaglia's silence, but denied soliciting that testimony. In denying Scordamaglia's motion to dismiss, the court reasoned as follows:

> All right. Not every mistrial or every error of this nature is a double jeopardy violation. In this case, there's nothing to indicate it was done deliberately by the prosecution. The answer was ramblingly non-responsive. I'm denying the motion, but will just indicate: This is happening and has happened so many times. I mean, there's just got to be a point where -- I've said it before -- everyone should be advised this is not okay.

Scordamaglia does not assert that the prosecutor acted in bad faith. Instead, relying primarily on Rich, he contends that his mistrial request cannot be considered

---

official conduct is so prejudicial to the defendant that it cannot be cured by means short of a mistrial, and if the official knows that the conduct is improper and prejudicial and either intends or is indifferent to the resulting mistrial or reversal." Washington courts have not settled whether Washington's constitutional double jeopardy clause is broader than the federal standard. See Hopson, 113 Wn.2d at 283-84. Because Scordamaglia does not argue that reversal is required under a broader standard, we need not address this issue.

11

consensual because Officer Smith's comment left him with two equally unacceptable choices—to proceed with a trial tainted by constitutional error or to move for a mistrial. Rich is distinguishable. In Rich, the defense moved to dismiss on the grounds the State had failed to prove an element of its case. 63 Wn. App. at 746. The trial court denied the motion and suggested that the State reopen its case. Id. When the defense objected, the court gave the option of allowing the State to reopen or having a mistrial declared. Id. When the defense objected to both choices, the trial court granted its own motion for a mistrial, then denied the defense's motion to dismiss for double jeopardy. Id. The appellate court reversed:

> Rich was faced with a "Hobson's choice" of either agreeing to allow the State to reopen, which would clearly prejudice his prospects for acquittal, or agreeing to a mistrial. Faced with these choices, Rich did nothing but simply protest. His failure to select either of two unfavorable options cannot be considered consent to the declaration of a mistrial.

Rich, 63 Wn. App. at 748 (footnote omitted).

Here, unlike the defendant in Rich, Scordamaglia responded to the constitutional violation by choosing to move for a mistrial. He now claims this choice was non-consensual. But, under Scordamaglia's reasoning, no defendant seeking a mistrial due to prosecutorial error could ever be seen as consenting. Moreover, unlike Rich, retrying Scordamaglia within time for trial eliminated the taint of Officer Smith's testimony without prejudicing his prospects for acquittal. The trial court did not abuse its discretion in determining that double jeopardy did not bar retrial.

Scordamaglia also asserts that the trial court abused its discretion in denying his motion to dismiss because the prosecutor's failure to adequately prepare Officer Smith, although not bad faith, constituted mismanagement warranting dismissal under CrR

12

8.3(b).[6] He contends that he suffered actual prejudice, because he had been in custody for 67 days at the time of mistrial and Washington has a speedy trial deadline of 60 days. See CrR 3.3(b)(1)(i). Scordamaglia concedes that the State tolled his time for trial by initially filing the charges in district court, but asserts that this was an abuse of the preliminary hearing mechanism. Given that the second trial commenced within time for trial, we cannot say the prosecutor's failure to prevent Officer Smith from commenting that Scordamaglia invoked his right to remain silent, without more, warrants dismissal under CrR 8.3(b).

## IV.    Discovery Violation

Scordamaglia contends that the trial court erred in denying his CrR 4.7 motion to exclude Detective Paxton's testimony as a sanction for the State's late witness disclosure. We review discovery decisions based on CrR 4.7 for abuse of discretion. State v. Vance, 184 Wn. App. 902, 911, 339 P.3d 245 (2014). A trial court abuses its discretion when its decision is manifestly unreasonable, when it exercises its decision on untenable grounds, or when it makes its decision for untenable reasons. State v. Brooks, 149 Wn. App. 373, 384, 203 P.3d 397 (2009).

CrR 4.7(a)(1)(i) requires the State to disclose the names of persons whom the prosecuting attorney intends to call as witnesses no later than the omnibus hearing. "The purpose of the discovery rules . . . is to prevent a defendant from being prejudiced by surprise, misconduct, or arbitrary action by the government." State v. Cannon, 130 Wn.2d

_____

[6] The State asserts that the defense waived this CrR 8.3(b) claim, by failing to brief or argue it at the scheduled posttrial hearing. But, here, unlike the CrR 8.3(b) motions we deemed waived, the court denied the motion on the record. Although the oral ruling did not expressly mention CrR 8.3(b) as a basis for dismissal, there is no indication that the court reserved ruling on CrR 8.3(b). Waiver does not apply under these circumstances.

313, 328, 922 P.2d 1293 (1996). If a party fails to comply with a discovery rule, CrR 4.7(h)(7)(i) provides that "the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, dismiss the action or enter such other order as it deems just under the circumstances." Generally speaking, a failure to produce evidence or identify witnesses in a timely manner is "appropriately remedied by continuing trial to give the nonviolating party time to interview a new witness or prepare to address new evidence." Hutchinson, 135 Wn.2d 863, 881, 959 P.2d 1061 (1998). "Excluding evidence is an 'extraordinary remedy' under CrR 4.7(h) that 'should be applied narrowly.'" State v. Venegas, 155 Wn. App. 507, 521, 228 P.3d 813 (2010) (quoting State v. Hutchinson, 135 Wn.2d at 882).

In Hutchinson, our Supreme Court held that trial courts deciding whether to exclude evidence as a sanction must consider (1) the effectiveness of less severe sanctions, (2) the impact of witness preclusion on the evidence at trial and the outcome of the case, (3) the extent to which the witness's testimony will surprise or prejudice the other party, and (4) whether the violation was willful or in bad faith. 135 Wn.2d at 882-83.

Here, although the colloquy between the court and counsel does not indicate any express consideration of the Hutchinson factors, the parties discussed the issue at length. Applying these factors, we agree with the State that the trial court did not abuse its discretion in allowing Detective Paxton to testify regarding chain of custody.

First, the court offered the less severe alternative of continuing the case for one day to interview Detective Paxton. The court also indicated that it would grant Scordamaglia's motion for a second mistrial coupled with release from custody if

necessary to investigate the missing photographs or reformulate defense strategy. Scordamaglia initially accepted this option, but withdrew the motion and chose to proceed. Second, excluding Detective Paxton's testimony could have substantially impacted the outcome of the case by preventing the State from meeting the foundation requirements to admit the controlled substance into evidence. Third, defense counsel made it clear that the late disclosure of Detective Paxton was a not a surprise. Rather, she recognized the chain of custody issue in advance and relied on it as a defense strategy. In ruling that Detective Paxton could testify regarding chain of custody, the court reasoned that "the fact he took the pictures was in discovery" and that "there wasn't a lack of discovery of his existence and that he had gone into the envelope and when." Because defense was not surprised by Detective Paxton's role in the case, any prejudice arose from the need to reformulate trial strategy. The court offered to ameliorate this prejudice by granting a continuance or mistrial coupled with Scordamaglia's release, but the defense chose to go forward with Detective Paxton's testimony. Fourth, although the State's failure to name Detective Paxton as a witness was arguably sloppy, there is no indication that this omission resulted from bad faith. On balance, we cannot say the trial court abused its discretion in permitting Detective Paxton to testify.

V.    Chain of Custody

Scordamaglia contends that the trial court erred in failing to exclude the plastic baggie and its contents because the State laid an insufficient foundation for the chain of custody. "Before a physical object connected with the commission of a crime may properly be admitted into evidence, it must be satisfactorily identified and shown to be in substantially the same condition as when the crime was committed." State v. Campbell,

103 Wn.2d 1, 21, 691 P.2d 929 (1984). "Evidence that is unique and readily identifiable may be identified by a witness who can state that the item is what it purports to be." State v. Roche, 114 Wn. App. 424, 436, 59 P.3d 682 (2002) (citing 5 KARL B. TEGLAND, WASH. PRAC. § 402.31 (1999)). "Factors to be considered include the nature of the item, the circumstances surrounding the preservation and custody, and the likelihood of tampering or alteration." Id. "[M]inor discrepancies or uncertainty on the part of the witness will affect only the weight of the evidence, not its admissibility." Campbell, 103 Wn.2d at 21. We review a trial court's decision to admit evidence for abuse of discretion. Id.

Scordamaglia asserts that the plastic baggie and its contents were not "satisfactorily identified" because (1) the baggie presented at trial had blue stars on it but Detective Paxton's photographs of the baggie did not show any markings, and (2) Officer Smith recorded the weight of the baggie and substance as 0.9 grams, but Dr. Northrup recorded the weight as 0.4 grams. He therefore contends that the State failed to establish the chain of custody and the trial court erred in admitting the evidence. The State contends that the defense waived appellate review of this issue by failing to object to admission of the evidence below. We agree.

When the State initially sought to introduce the baggie and substance into evidence, the defense objected on the ground that the State had failed to establish the chain of custody. The defense also objected to Detective Paxton's testimony because the State added him as a witness mid-trial. However, after the court allowed Detective Paxton to testify regarding chain of custody, the State again sought to introduce the plastic baggie and substance into evidence. This time, defense counsel did not object to its admission. And, when the State moved to admit Dr. Northrup's test report, defense

16

counsel renewed her objection regarding timeliness but expressly did not object on the basis of foundation. Because Scordamaglia waived or abandoned his objection to admitting the drug evidence based on chain of custody, we will not consider it further. Valladares, 99 Wn.2d at 671-72.

We affirm.

WE CONCUR: