[No. 19547-3-III.  Division Three.  February 27, 2003.]

THE STATE OF WASHINGTON, *Respondent*, v. JACOBO CEDILLO JUAREZ, *Appellant*.

*Dan K. Connolly*, for appellant.
*Karl F. Sloan, Prosecuting Attorney*, for respondent.

Sweeney, J. — A criminal defendant cannot be put in jeopardy twice for the same offense. U.S. Const. amend. V;

WASH. CONST. art. I, § 9. And jeopardy attaches when a jury is selected and sworn. *State v. Rich*, 63 Wn. App. 743, 747, 821 P.2d 1269 (1992).

Here, compelling discovery violations by the State left insufficient time for the defense to meet damaging new evidence within the speedy trial period. Jacobo Cedillo Juarez was thereby forced to choose between his constitutional right to have both a speedy trial and effective assistance of counsel. The trial court refused either to dismiss the prosecution or to suppress the evidence, however, and instead impaneled a jury. Mr. Juarez moved under protest for a continuance. The court responded by declaring a mistrial. Mr. Juarez was later tried before a different jury. He was, then, put in jeopardy twice. We reverse his conviction and dismiss the charges.

## FACTS

The State charged Jacobo Juarez with three counts of delivery of cocaine. The charges followed controlled buys on January 12, 26, and 27, 2000. The buys on January 26 and 27 were audiotaped. Mr. Juarez and the confidential informant (CI) spoke in Spanish.

The court arraigned Mr. Juarez on February 24. He remained in custody. So the latest date to satisfy the speedy trial mandate was April 24. Trial was set for March 28. The State moved for continuance to accommodate an unavailable witness. Trial was then set for April 18. The next available jury after that was May 2.

On February 24, the court ordered production of "all discovery," specifically audiotapes and transcripts, before an omnibus compliance hearing on March 2. At the omnibus hearing on March 2, the defense made a specific request for any body-wire tapes or transcripts.

At a March 16 status conference, the defense reminded the State that it had yet to comply with the discovery order. The court ordered the State to "get on it." Report of Proceedings (RP) (Apr. 18, 2000) at 32. Only then did the

State send the tapes to be transcribed. On March 22, the defense received the first set of transcripts, which contained essentially no dialog, and consisted almost entirely of "inaudible" notations. The State did not turn over the tapes themselves.

Because of the poor quality of the transcripts, the State told the defense the tapes would probably not be used at trial.

On April 14 (the Friday before the Tuesday trial date), the prosecutor sent the defense the audiotapes together with a second transcription. This transcription was a little clearer but still basically useless. The prosecutor then told the defense the tapes were being transcribed a third time and that new information had been found.

The court learned all of this on Monday, April 17, the day before trial. The prosecutor gave the defense, for the first time, the third transcription and proposed that it be introduced as evidence. The court gave defense counsel a couple of hours to compare the new transcripts with the audiotapes. The defense estimated that the third transcripts contained 80 to 90 percent more information. The State's estimate was 60 percent. The new transcripts included incriminating statements previously labeled "inaudible." Defense counsel said he would move to exclude the tapes.

Defense counsel explained Mr. Juarez's dilemma: either waive speedy trial or proceed with ineffective counsel because of the impossibility of preparing a defense to the new evidence on such short notice. Mr. Juarez was not willing to waive his right to a speedy trial. The State insisted the tapes were crucial to going forward with the case. The court agreed that audiotapes generally are "some of the most compelling evidence imaginable." RP (Apr. 17, 2000) at 21.

The court issued a provisional ruling that the tapes would not be admitted. The court offered to reconsider its ruling before trial the next day if the State could come up with any supporting authority.

On trial day, April 18, the State moved for reconsideration of the ruling excluding the tapes. Mr. Juarez moved to dismiss the prosecution because the State's failure to provide timely discovery had prevented him from obtaining his own expert analysis of the tapes. Defense counsel explained that the situation presented a classic dilemma of a criminal defendant being forced to choose between constitutional rights—either effective assistance of counsel or a speedy trial.

The court denied the motion to dismiss. It acknowledged that dismissal was within its discretion under discovery rule CrR 4.7(h)(7) but just did not "see a way to get there in this case." RP (Apr. 18, 2000) at 36. The court was of the opinion that dismissal was appropriate only if surprise evidence was exculpatory. Therefore, the only remedy it would consider was to suppress the tapes. The court reserved its decision on suppression and selected and swore in a jury.

The following morning, April 19, the court again took up the matter of the tapes. The State conceded that the latest transcripts contained new and highly incriminating evidence. The prosecutor explained that, as a money saving measure, the State's policy was to postpone the ordering of tape transcripts until close to the trial date. Mr. Juarez renewed his objection to the admission of the tapes on such short notice. Defense counsel also told the court he had just received additional belated discovery from the State in the form of a police report by an officer who said he saw Mr. Juarez handing something to the CI.

The court calculated that the State had retained the tapes for 78 to 79 days before providing the transcript. The court thought this inexcusably tardy and prejudicial to the defendant. But the court found that the State had not acted in bad faith. It therefore decided to continue the trial to April 24—the last day of the speedy trial period—contingent on the continuing availability of the jury.

The court appointed Raul Martinez, a certified Spanish language courtroom interpreter, to help the defense analyze

the tapes and transcripts. But Mr. Martinez was unavailable for trial on April 24. Mr. Juarez again unsuccessfully moved to dismiss.

The court then announced it would not, after all, continue the trial unless Mr. Juarez formally moved for a continuance. Defense counsel did so under protest, citing his inability to defend against the newly produced evidence.

> THE COURT: Do you have a motion for continuance at this point beyond the 24th?
>
> [DEFENSE COUNSEL]: Yes. I'm moving to continue the trial. I don't see that I have any choice.

RP (Apr. 19, 2000) at 87.

The State then objected to any continuance past April 24, the last speedy trial date. But, in light of the highly damaging nature of the most recent transcripts and the defense's need for more time to address it, the court ordered the trial continued until May 23.

The court then declared a mistrial and dismissed the jury.

On May 23, a second jury found Mr. Juarez guilty of three counts of delivering cocaine. He was sentenced to 67 months.

## DISCUSSION

We do not reach a number of interesting discovery and procedural issues raised by Mr. Juarez because they are incidental to the grounds underlying our disposition. That is, we conclude that Mr. Juarez's right not to be placed in jeopardy twice was violated.

DOUBLE JEOPARDY

■ The double jeopardy clause of the Fifth Amendment protects the criminal defendant from repeated prosecutions for the same offense. *United States v. Dinitz*, 424 U.S. 600, 606, 96 S. Ct. 1075, 47 L. Ed. 2d 267 (1976). Mr. Juarez contends that jeopardy attached when the first jury was selected and sworn. Retrial is, therefore, barred unless either the defense freely consented to a mistrial or some

emergency necessitated discharge of the jury over the defendant's objection. *State v. Rich*, 63 Wn. App. 743, 747, 821 P.2d 1269 (1992).

■ Besides prohibiting additional trials for the same offense after conviction or acquittal, double jeopardy also protects the right of the defendant to be tried by the jury he selected. *State v. Jones*, 97 Wn.2d 159, 162, 641 P.2d 708 (1982) (citing *Arizona v. Washington*, 434 U.S. 497, 503 n.11, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978)). When, as here, a mistrial is declared, the defendant's "valued right to have his trial completed by a particular tribunal" is implicated. *Wade v. Hunter*, 336 U.S. 684, 689, 69 S. Ct. 834, 93 L. Ed. 974 (1949).[1]

■ We must first determine whether jeopardy attached in the first instance. And that is a question of law. *State v. Eldridge*, 17 Wn. App. 270, 275, 562 P.2d 276 (1977); *Downum v. United States*, 372 U.S. 734, 737, 83 S. Ct. 1033, 10 L. Ed. 2d 100 (1963).

■ Jeopardy attaches after the jury is selected and sworn. It is not necessary that argument or testimony be presented. *Downum*, 372 U.S. at 737. To hold otherwise would permit " 'unlimited, uncertain, and arbitrary judicial discretion.' " *Downum*, 372 U.S. at 738 (quoting *United States v. Watson*, 3 Ben. 1, 28 F. Cas. 499 (S.D.N.Y. 1868) (No. 16,651)). In *Downum*, a jury was selected and sworn and instructed to return later. When it returned, the prosecution asked that the jury be discharged because a key witness was not present. The defense moved to strike the counts involving the absent witness for want of prosecution and to proceed with trial on the remaining counts. This motion was denied. And the judge discharged the jury over defense objections. Two days later, the case was called again. And a second jury was impaneled. The defendant pleaded double jeopardy. *Downum*, 372 U.S. at 735. The Court noted that, by allowing a jury to be selected and

---

[1] *See United States v. Jorn*, 400 U.S. 470, 484-85, 91 S. Ct. 547, 27 L. Ed. 2d 543 (1971) (plurality opinion); *Downum v. United States*, 372 U.S. 734, 736, 83 S. Ct. 1033, 10 L. Ed. 2d 100 (1963).

sworn even though one of its key witnesses had not been located, the prosecutor " 'took a chance.' " *Downum*, 372 U.S. at 737 (quoting *Cornero v. United States*, 48 F.2d 69, 71 (9th Cir. 1931)).

The Washington Supreme Court has stated in dictum that jeopardy attaches when the first witness is asked and answers the first question. *Jones*, 97 Wn.2d at 162. The *Jones* jury, however, had begun deliberations when the mistrial was declared.

Here, the prosecutor acquiesced in the court's decision to impanel a jury before the judge decided that the case could proceed. The jury was selected and sworn. Jeopardy attached at that point.

We next ask whether the defendant freely consented to the mistrial. That is, whether the court or prosecutor acted in bad faith and by doing so put the defendant in the position of accepting either a mistrial or serious prejudice to his chances of acquittal. *Rich*, 63 Wn. App. at 747 (citing *Dinitz*, 424 U.S. 600). If the defense did not freely consent, we examine the sufficiency of the trial court's grounds for discharging the jury. The decision to discharge must be compelled by necessity or emergency. *Id.* (citing *State v. Connors*, 59 Wn.2d 879, 883, 371 P.2d 541 (1962)).

The State urges that the mistrial and continuance were at the defendant's behest. A motion by the defendant for mistrial will ordinarily remove any barrier to further prosecution, absent circumstances attributable to " 'prosecutorial or judicial overreaching.' " *Dinitz*, 424 U.S. at 607 (quoting *United States v. Jorn*, 400 U.S. 470, 485, 91 S. Ct. 547, 27 L. Ed. 2d 543 (1971)). Retrial is allowed if the defense consents and the mistrial results from judicial or prosecutorial error that is not motivated by bad faith. *Rich*, 63 Wn. App. at 747 (citing *Dinitz*, 424 U.S. at 611).

In *Rich*, the defense had to either accept a mistrial or consent to the State reopening its case to prove an essential element it had overlooked. *Rich*, 63 Wn. App. at 746. The court held that consent in the face of such a "Hobson's

choice" between continuing under circumstances of serious prejudice or agreeing to a mistrial is not a choice between genuine alternatives. It could not then be considered consensual. *Id.* at 748.

Here, when the decision to seat a jury was made, the court gave every indication that it was leaning toward suppression of the tapes as the appropriate remedy for the discovery violation. RP (Apr. 18, 2000) at 36. Only after the jury was selected and sworn did the court demand that the defendant either consent to a continuance or go forward unprepared.

The trial court's broad discretion to declare a mistrial is "not unbridled." *State v. Browning*, 38 Wn. App. 772, 775, 689 P.2d 1108 (1984). The defendant has the right to have his case determined by the jury that has been selected and sworn. *Id.* To discharge the jury without the defendant's consent is tantamount to an acquittal, " 'unless such discharge was necessary in the interest of the proper administration of public justice.' " *Jones*, 97 Wn.2d at 162 (emphasis omitted) (quoting *Connors*, 59 Wn.2d at 883).

A mistrial will free the defendant from further prosecution, unless it is prompted by "manifest necessity." *Browning*, 38 Wn. App. at 775 (citing *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 6 L. Ed. 165 (1824)). This means that "extraordinary and striking" circumstances must be present which clearly indicate that " 'substantial justice cannot be obtained without discontinuing the trial.' " *Jones*, 97 Wn.2d at 163 (quoting *State v. Bishop*, 6 Wn. App. 146, 150, 491 P.2d 1359 (1971)).

Here, the court proceeded with jury selection before deciding crucial matters necessary to determine that the case was ready to be tried. The jury could not be held over because of the trial schedule and an upcoming Easter schedule. And the defense was unprepared to confront highly prejudicial new evidence. The "manifest necessity" was, then, of the trial court's making. The State assumes the risk of failing to set the stage before placing a criminal defendant in jeopardy. *Downum*, 372 U.S. at 737.

Jeopardy attached in the first trial. The defendant did not freely move for mistrial and any appearance of consent to the mistrial that was extracted from the motion for continuance was illusory. The manifest necessity for the mistrial was court-created. Mr. Juarez was then placed in jeopardy twice for the same crime.

The convictions are reversed and the prosecution dismissed.

SCHULTHEIS and KURTZ, JJ., concur.