# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 52022-2-II |
| Respondent, | |
| v. | |
| RICHARD ALAN LUCAS, JR., | UNPUBLISHED OPINION |
| Appellant. | |
| In the Matter of the Personal Restraint of: | No. 53242-5-II |
| RICHARD ALAN LUCAS, JR., | |
| Petitioner. | |

GLASGOW, J.—A police officer saw Richard Alan Lucas Jr. driving a stolen car. The officer arrested Lucas, and the State charged him with possession of a stolen vehicle and making or possessing motor vehicle theft tools. After Lucas failed to appear at an omnibus hearing, the State added a bail jumping charge.

Before trial, Lucas moved for the trial judge to recuse himself, and the trial judge denied the motion. After swearing in the jury, the trial judge reconsidered, concluded he could not sit on the case, and declared a mistrial. Lucas was later tried and convicted on all three charges.

Lucas appealed, arguing that the trial court violated double jeopardy when it did not dismiss his charges after the mistrial. He also contends that the trial court erred when it excluded as hearsay his testimony explaining that he missed the omnibus hearing because his lawyer told him to return

on a different day. He argues that the trial court erred in calculating his offender score because his prior felony convictions should have washed out. He also filed a statement of additional grounds.

We hold that the trial court did not abuse its discretion in declaring a mistrial in the interest of justice, so double jeopardy was not violated. The trial court should have admitted Lucas's testimony that defense counsel told him to return on a different day for the omnibus hearing, and the error was not harmless. We therefore reverse his bail jumping conviction. Because Lucas will need to be resentenced and because the trial court has not previously had a chance to address whether any of Lucas's prior convictions have washed out, we direct the trial court to address this issue on resentencing. Finally, none of the arguments in Lucas's statement of additional grounds requires reversal.

Consolidated with his direct appeal is a timely personal restraint petition (PRP), in which Lucas restates his double jeopardy argument and raises several claims of ineffective assistance of counsel. None of these arguments prevails, and we deny the PRP.

We affirm Lucas's convictions for possession of a stolen vehicle and making or possessing motor vehicle theft tools, reverse his conviction for bail jumping, deny his PRP, and remand for further proceedings, including resentencing where the trial court should address whether any of Lucas's prior convictions have washed out.

FACTS

A.      Background Facts and Declaration of Mistrial

Deputy Charles Roberts Jr. saw Lucas driving a car that Roberts quickly discovered was stolen. When Roberts contacted Lucas, Lucas dropped a big key chain of shaved keys on the passenger seat of the car. Roberts then arrested Lucas.

Lucas was charged with possession of a stolen vehicle and making or possessing motor vehicle theft tools. His omnibus hearing was set for March 2, 2017 at 8:45 a.m. and his pretrial hearing was set for March 15, 2017. On March 2, 2017, Lucas was not present in his assigned courtroom during roll call[1] at 8:42 a.m. or 10:55 a.m., and the gallery was empty as of 11:10 a.m. The trial court issued a bench warrant for his arrest. At some point, Lucas changed attorneys.

Lucas then appeared at a hearing on March 21, 2017 to ask the trial court to quash the warrant. After Lucas's new attorney explained Lucas's absence from the omnibus hearing, the trial court quashed the warrant. The State filed an amended information adding an additional charge of bail jumping based on Lucas's failure to appear on March 2, 2017.

Lucas pleaded guilty to all charges and was accepted into drug court. Soon thereafter, Lucas filed a motion to withdraw his guilty plea and opt out of drug court, which the trial court granted.

Trial began on January 16, 2018 before the same judge who had granted Lucas's motion to withdraw his guilty plea. On the morning of trial, Lucas moved to disqualify the judge based on Lucas's allegation that the judge said that he hoped Lucas would be "charged to the fullest extent of the law" when he allowed Lucas to withdraw the guilty plea. Verbatim Report of Proceedings (VRP) (Jan. 16, 2018) at 6. Lucas argued that this remark suggested that the judge could not be fair and impartial. Lucas did not present any evidence to support the motion, though he suggested that there was a recording of that hearing that would confirm his claim. The trial court denied the motion.

---

[1] One of the duties of the prosecutor assigned to a given pretrial docket is to call the last name of every defendant not in custody who is scheduled for a hearing on that docket and mark whether they are present.

Also on the morning of trial, Lucas's new attorney moved to withdraw. The trial court denied the motion, noting that Lucas had already gone through several attorneys. A jury was then selected and sworn in.

On the next trial day, the judge called the parties in to listen to the recording of the drug court hearing, which the judge had located on his own initiative. The parties and the trial court then listened to the recording, which confirmed that the judge had said that "hopefully" the State would prosecute Lucas to the fullest extent of the law. VRP (Jan. 18, 2018) at 36-38. Lucas and his trial counsel then conferred in the hallway, off the record. When they returned, the judge and defense counsel had the following exchange:

> THE COURT: [Defense counsel], I will tell you right now that if Mr. Lucas wants me to, I'm going to recuse myself.
> [DEFENSE COUNSEL]: That's what I'm going to ask.
> THE COURT: I am going to declare a mistrial, and I will leave it at that. I think, based on at least an appearance of fairness, it's inappropriate for me to continue with this trial.
> . . . .
> I am going to dismiss the jury. Please bring them out.

VRP (Jan. 18, 2018) at 37-38.

B.      Trial

A new trial was held with a new jury and judge. Roberts testified at trial that he saw Lucas driving at about 8:00 a.m. As Roberts followed Lucas, he ran the license plate on the car. While Roberts was waiting for a return on the plates, Lucas pulled into a driveway. Roberts slowly drove by and saw Lucas get out of the driver's seat. Then Roberts got a return on the license plate and learned that the plate was stolen. Roberts turned around and circled back to the driveway, where he saw Lucas walking past the car.

Noting that Lucas was "looking around, like he was looking for the best place to go," Roberts ordered Lucas to "get back in his car." VRP (Jan. 30, 2018) at 42. At this time Roberts heard back from dispatch verifying that the plates were stolen. He then drew his gun and ordered Lucas to put his hands in the air. Roberts noticed that Lucas was holding a big key chain of shaved keys, which Lucas then dropped on the passenger seat. Roberts arrested Lucas, impounded the car, seized the keys, and booked the keys into evidence. Roberts explained to the jury how shaved keys are used to steal cars.

Lucas testified that he had been walking along the street and happened to be near the car when the real car thief pulled into the driveway and ran away. He claimed that he had only gotten in the car because Roberts ordered him to and that he had to pick up the keys from the driver's seat in order to sit down.

Lucas also testified that he did appear at court for the omnibus hearing on the morning of March 2, 2017 for about an hour, although he did not know exactly what time he was there. He said he knew the correct date and where to go from the paperwork, he went to the correct courtroom, and he talked to his attorney before leaving.

Defense counsel then asked Lucas why he thought he could leave, and Lucas replied, "I thought I could leave because my lawyer said -- he told me to come back on the 15th." VRP (Jan. 30, 2018) at 181. The State objected on hearsay grounds, and the trial court sustained and ordered Lucas not to answer the question. Defense counsel then rephrased the question: "So you talked to your lawyer, and then you what?" *Id.* Lucas replied, "I left. He said it was okay to go." *Id.* The State again objected, and the trial court sustained and instructed the jury to disregard the statement.

5

Deputy Prosecutor Nate Zink testified that Lucas was not present during roll call on March 2, 2017, and that Lucas's attorney could not have obtained a continuance to March 15, 2017 without filing a motion with Lucas's signature.

Following Lucas's direct examination, he moved to "get rid of" his trial counsel, but the trial court denied his request. VRP (Feb. 1, 2018) at 187-88. The State then moved to admit the transcript of the March 21, 2017 warrant quash hearing, where Lucas's then attorney explained the reasons for Lucas's absence from the March 2, 2017 omnibus hearing. The State argued that the transcript contradicted Lucas's claim that he had appeared on March 2, 2017 because in the transcript, the attorney appearing on the motion to quash said Lucas thought the omnibus hearing was on March 15, 2017. The trial court admitted the transcript.

The trial court took a brief recess. When the trial court reconvened, Lucas was gone, and neither the trial court, the State, defense counsel, nor any court staff knew where he had gone. After unsuccessful attempts to reach or locate Lucas, the trial court ruled that his absence was voluntary, issued a bench warrant, and allowed the trial to proceed without him. Being unable to cross-examine Lucas, the State called a deputy prosecutor to explain the quash hearing process and read the relevant portions of the admitted transcript for the jury, including defense counsel's explanation at that time for Lucas's absence from the March 2, 2017 hearing:

> "Mr. Lucas tells me that he believed that omnibus was set for March 15th .
> . . . That belief is supported in the record by the date that Mr. Lucas set the bench
> warrant quash, which was March 15th."
> . . . .
> "Mr. Lucas did appear on pretrial date. It sounds like he made an honest mistake."

VRP (Feb. 1, 2018) at 241-42 (quoting transcript).

The jury found Lucas guilty on all three counts, including bail jumping.

C.    Sentencing

At sentencing, the trial court concluded, and Lucas did not dispute, that Lucas's prior felony convictions did not wash out under RCW 9.94A.525(2)(c). The trial court calculated Lucas's offender score at nine plus and accordingly sentenced him to 57 months for unlawful possession of a stolen motor vehicle and 60 months for bail jumping, running concurrently. The trial court also sentenced Lucas to 364 days (184 days suspended) for his misdemeanor conviction for making or possessing motor vehicle theft tools, running consecutive to his 60 month felony sentence.

Lucas filed an appeal and a timely PRP, which were consolidated in this court.

ANALYSIS

In his appeal, Lucas argues that the trial court violated double jeopardy when it did not dismiss the charges against him after the mistrial. He also contends that the trial court erred in excluding his testimony regarding what his attorney told him about the March 2, 2017 hearing and erred in calculating his offender score because his prior felony convictions should have washed out. He has also filed a statement of additional grounds. In his PRP, Lucas restates his double jeopardy argument and suggests the trial court committed judicial misconduct in declaring a mistrial. He also raises several claims of ineffective assistance of counsel.

I. LUCAS'S APPEAL

A.    Double Jeopardy

Lucas argues that the State violated double jeopardy when it retried him after the initial judge recused himself and declared a mistrial. We disagree.

Article I, section 9 of the Washington Constitution provides that no person shall twice be put in jeopardy for the same offense. Washington's double jeopardy provision affords the same protections as the Fifth Amendment to the United States Constitution. *State v. Strine*, 176 Wn.2d 742, 751, 293 P.3d 1177 (2013). "'These double jeopardy provisions not only protect a criminal defendant from a second prosecution for the same offense after conviction or acquittal, and from multiple punishments for the same offense, but also the valued right [of the defendant] to have his trial completed by a particular tribunal.'" *Id.* at 751-52 (alteration in original) (internal quotation marks omitted) (quoting *State v. Jones*, 97 Wn.2d 159, 162, 641 P.2d 708 (1982)).

The double jeopardy clause bars the State from retrying a defendant where "(1) jeopardy has previously attached, (2) jeopardy has terminated, and (3) the defendant is in jeopardy a second time for the same offense in fact and law." *Id.* at 752. "'Jeopardy attaches after the jury is selected and sworn.'" *Id.* (quoting *State v. Cedillo Juarez*, 115 Wn. App. 881, 887, 64 P.3d 83 (2003)). Here it is clear that jeopardy attached and that the State retried Lucas for the same offenses, so the only element at issue is whether jeopardy terminated.

"Jeopardy may be terminated in one of three ways: (1) when the defendant is acquitted, (2) when the defendant is convicted and that conviction is final, or (3) when the court dismisses the jury without the defendant's consent and the dismissal is not in the interest of justice." *Id.* A discharge of the jury without the defendant's consent has the same effect as an acquittal unless the mistrial was in the interest of justice. *Jones*, 97 Wn.2d at 162. We hold that, even if Lucas did not consent to the mistrial, an issue we need not decide, the trial court did not abuse its discretion in declaring a mistrial in the interests of justice.

Our Supreme Court has explained that "the proper administration of justice requires that 'the defendant's valued right to have his trial completed by a particular jury may, on proper occasions, be subordinated to the public's interest in fair trials to end in just judgments.'" *Strine*, 176 Wn.2d at 757 (quoting *State v. Connors*, 59 Wn.2d 879, 883, 371 P.2d 541 (1962)). To warrant trial after a mistrial, the decision to discharge the jury must have been compelled by necessity or emergency. *Cedillo Juarez*, 115 Wn. App. at 888. This inquiry is analogous to the United States Supreme Court's manifest necessity analysis. *State v. Hall*, 162 Wn.2d 901, 911, 177 P.3d 680 (2008). "While the decision to discharge a jury is within the broad discretion of the trial court, there must be 'extraordinary and striking' circumstances to justify the discharge." *State v. Kirk*, 64 Wn. App. 788, 793, 828 P.2d 1128 (1992) (quoting *Jones*, 97 Wn.2d at 163).

Importantly, a mistrial necessitated by recusal in accordance with standards of judicial conduct constitutes a "manifest necessity" in this context. *State v. Graham*, 91 Wn. App. 663, 667-68, 960 P.2d 457 (1998). CJC 2.11(A) provides that judges must disqualify themselves in a proceeding in which their impartiality might reasonably be questioned. *See also State v. Dominguez*, 81 Wn. App. 325, 328-29, 914 P.2d 141 (1996). Bad faith negates manifest necessity, but where there is no bad faith on the part of the court, its decision to declare a mistrial "is accorded the highest deference and is not an abuse of discretion." *Graham*, 91 Wn. App. at 670. And although the *Graham* court recognized that negligence can negate manifest necessity in limited circumstances, it also explained that mistrial was a necessity where, at the time the court discovered the basis for judicial disqualification, there was no alternative to achieve a cure except for recusal and mistrial. *Id.* at 671. In *Graham,* we concluded that a pro tem judge's late realization

that he had previously represented the victim in a case might have been characterized as negligence, but it was not the sort that negated manifest necessity. *Id.*

Here, the judge was presented with a recusal motion without any supporting evidence, and he denied the motion on that basis. When the judge later learned of evidence supporting the motion, he came to the proper conclusion that his prior remarks at Lucas's drug court hearing might call his impartiality into question, and he accordingly recused himself. The record here does not suggest the judge acted in bad faith, as he properly denied Lucas's initial motion for its apparent lack of factual basis, and then sought out the drug court recording himself. He then gave Lucas a chance to renew his motion after reviewing the recording and recognizing the appearance of bias.

Lucas argues that the judge caused the error by initially rejecting Lucas's recusal motion, impaneling the jury, and then afterward recusing himself. Lucas relies on *Cedillo Juarez*, where the trial court indicated that it would suppress evidence damaging to Cedillo Juarez to remedy a discovery violation by the State. 115 Wn. App. at 889. But then the court reversed course after impaneling the jury and demanding that Cedillo Juarez either consent to a mistrial or go forward without enough time to prepare to fully address that evidence. *Id.* Division Three held that the resulting mistrial was improper because the necessity or emergency was "of the trial court's making," where the trial court proceeded with jury selection before deciding crucial matters necessary to determine that the case was ready to be tried. *Id.*

In contrast, in *Graham,* a case that is more factually similar to this one because it involved a realization that the judge needed to recuse, we concluded that the judge's late realization did not negate manifest necessity. 91 Wn. App. at 670-71. Given Lucas's failure to present evidence to support his initial recusal motion, it was not improper for the trial court here to deny the motion

and move forward with impaneling the jury at that time. The judge then properly recused himself when he became aware of evidence that called his impartiality into question, and he only did so after giving Lucas a chance to withdraw his motion. The trial court did not abuse its discretion in ordering a mistrial under circumstances similar to those in *Graham*.

We hold that the trial court's finding of manifest necessity was not an abuse of discretion, so jeopardy did not terminate with the mistrial. Thus, we conclude there was no double jeopardy violation.

B.    Hearsay

Lucas argues the trial court erred in excluding as hearsay Lucas's testimony that his attorney told him that he could leave the courthouse on March 2, 2017 and return on March 15, 2017 for the omnibus hearing. We agree and conclude that this error was not harmless.

    1.    Lucas's offered testimony

Hearsay is an out-of-court statement offered in court to prove the truth of the matter asserted. ER 801(c). Hearsay evidence is generally inadmissible unless it falls within one of the hearsay exceptions. ER 802. However, "[a] statement is not hearsay if it is used only to show the effect on the listener, without regard to the truth of the statement." *State v. Gonzalez-Gonzalez*, 193 Wn. App. 683, 690, 370 P.3d 989 (2016). Whether a statement was hearsay is a question of law reviewed de novo. *Id.* at 689.

Here, Lucas sought to tell the jury that his attorney told him that he could leave the courthouse on March 2, 2017 and return on March 15, 2017 for the omnibus hearing. The statement was offered not to show whether Lucas was actually required to appear on March 2, 2017, but

instead to show the effect his attorney's alleged statement had on Lucas and to explain why he left the courtroom.

The offered testimony was also relevant to an issue in controversy. *State v. Edwards*, 131 Wn. App. 611, 614, 128 P.3d 631 (2006). To convict Lucas of bail jumping, the State had to prove that Lucas had knowledge of the requirement to appear in court on March 2, 2017 and that he failed to do so. RCW 9A.76.170(1). Any testimony that Lucas's attorney told him he did not need to remain at the courthouse would have been relevant to explain Lucas's knowledge of the requirement and why he failed to appear. If the jury believed this testimony, it could have negated the knowledge element of bail jumping. The testimony was relevant to an issue in controversy and was not hearsay. Therefore, it should have been admitted.

2.      Harmless error

The State argues that, nevertheless, Lucas was not prejudiced because his testimony was contradicted by other evidence that he did not appear at the March 2, 2017 hearing for different reasons. We disagree.

An erroneous evidentiary ruling does not result in reversal unless the defendant was prejudiced. *State v. Thomas*, 150 Wn.2d 821, 871, 83 P.3d 970 (2004). For evidentiary errors not implicating a constitutional mandate, reversal is required only if, within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred. *Id.*; *see also State v. Pavlik*, 165 Wn. App. 645, 656-57, 268 P.3d 986 (2011). An error is harmless if the evidence is of minor significance in reference to the evidence as a whole. *State v. Neal*, 144 Wn.2d 600, 611, 30 P.3d 1255 (2001). In the context of improper exclusion of evidence, Washington courts have framed the nonconstitutional harmless error analysis as measuring the admissible

evidence of the defendant's guilt against the prejudice caused by the erroneous exclusion. *State v. Howard*, 127 Wn. App. 862, 871, 113 P.3d 511 (2005).

For example, in *Howard*, the trial court improperly excluded testimony of the alias of an alleged other suspect in a robbery. *Id.* Division One held the error was harmless because the witness could not place the alleged other suspect at the crime scene and testimony of the alias on its own did not amount to a clear claim that someone besides Howard may have been the other guilty party. *Id.* Moreover, the witness was permitted to testify that there was another man, who was not Howard, who was with the other perpetrators the morning of the robbery, so the jury had the same opportunity to consider the possibility that Howard was not involved. *Id.* at 871-72. Thus, the narrow character of the exclusion in light of the information the jury did receive supported a conclusion that the error was harmless. *Id.*

Similarly, in *Pavlik*, Division Three held that the improper exclusion of the defendant's testimony that he told a police officer he had acted in self-defense was harmless. 165 Wn. App. at 656-57. It was merely cumulative of other evidence to support his self-defense theory, and the theory itself was weak in light of the whole body of the State's case. *Id.*

Both *Howard* and *Pavlik* concluded that the improper exclusion of evidence was harmless, but this case is distinguishable. On one hand, Lucas was still permitted to testify that he did appear at the correct courtroom the morning of March 2, 2017, he spoke to his attorney, and he remained for about an hour before leaving. This testimony was contradicted by Zink's testimony that Lucas was not present during roll call and by the transcript of Lucas's March 21, 2017 quash hearing, which suggested that the reason Lucas missed the March 2, 2017 hearing was not because he came to the courthouse and was told he could leave, but rather that he never appeared because he thought

the hearing was on March 15, 2017. Lucas's inability to rebut the quash hearing transcript or explain how it was consistent with his story was self-inflicted because he disappeared in the middle of his own testimony. The trial court ruled that Lucas's absence after the transcript's admission was voluntary. and Lucas has not challenged that ruling.

Nevertheless, the excluded testimony was Lucas's only way to explain the central alleged fact of his defense to bail jumping—that his attorney told him he could leave. Unlike in *Howard* and *Pavlik*, the excluded testimony was not cumulative of other evidence of this core defense, and Lucas could not otherwise present his preferred theory of the case. Without this testimony, Lucas could not explain why his absence from the omnibus hearing was legitimate. Although this explanation was contradicted by the quash hearing transcript and Zink's testimony that Lucas was never present on March 2, 2017, the jury should have been permitted to weigh these competing characterizations of events that morning.

The excluded testimony was central to Lucas's defense to bail jumping, and it was not cumulative. We therefore conclude that Lucas has shown a reasonable probability that the outcome of his trial would have been materially affected had his testimony been admitted. We conclude the exclusion of his testimony was not harmless.

C.     Offender Score

Lucas argues the trial court erred in calculating his offender score because his prior felonies should have washed out under RCW 9.94A.525(2)(c). Because we reverse his conviction for bail jumping, we need not consider this argument, as Lucas will ultimately need to be resentenced in any event. Lucas conceded at sentencing that his prior convictions did not wash out, so the trial court has not had a chance to address this offender score challenge made for the first time in this

appeal. Therefore, the parties may present their arguments regarding the proper offender score during resentencing, where the trial court can determine the appropriate offender score in light of these arguments.

D.     Statement of Additional Grounds

In his statement of additional grounds, Lucas raises claims of ineffective assistance of counsel related to his trial counsel's cross-examination of Roberts and counsel's attempt to withdraw from Lucas's case. Because these arguments are also raised in Lucas's PRP, we address them below.

## II. LUCAS'S PRP

A.     Burden to Prove Relief from Restraint is Warranted

A petitioner may request relief through a PRP when the petitioner is under an unlawful restraint. RAP 16.4(a)-(c). "A personal restraint petitioner must prove either a (1) constitutional error that results in actual and substantial prejudice or (2) nonconstitutional error that 'constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" *In re Pers. Restraint of Monschke*, 160 Wn. App. 479, 488, 251 P.3d 884 (2010) (internal quotation marks omitted) (quoting *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 672, 101 P.3d 1 (2004)). The petitioner must prove prejudice by a preponderance of the evidence. *In re Pers. Restraint of Lord*, 152 Wn.2d 182, 188, 94 P.3d 952 (2004). We hold a pro se petitioner to the same standard as an attorney. *In re Pers. Restraint of Rhem*, 188 Wn.2d 321, 328, 394 P.3d 367 (2017).

The petitioner must support claims of error with a statement of facts on which the claims are based and must identify the evidence supporting the factual allegations. RAP 16.7(a)(2)(i); *Monschke*, 160 Wn. App. at 488. The petitioner cannot rely solely on conclusory allegations.

*Monschke*, 160 Wn. App. at 488. If the petitioner's allegations are based on matters outside the existing record, they must demonstrate competent, admissible evidence to establish the facts that entitle them to relief. *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992). The State is held to this same standard in its response. *In re Pers. Restraint of Reise*, 146 Wn. App. 772, 780, 192 P.3d 949 (2008); *see also* RAP 16.9.

In evaluating PRPs, we may dismiss the PRP if the petitioner fails to make a prima facie showing of constitutional or nonconstitutional error, remand for a full hearing if the petitioner makes a prima facie showing but the merits of the contentions cannot be determined solely from the record, or grant the PRP without further hearing if the petitioner has proved actual prejudice or a miscarriage of justice. *In re Pers. Restraint of Stockwell*, 160 Wn. App. 172, 176-77, 248 P.3d 576 (2011).

B.     Double Jeopardy/Judicial Misconduct

In his pro se PRP, Lucas restates his counsel's argument regarding double jeopardy, which is resolved above. As discussed above, it was not improper for the trial court to declare a mistrial in the interest of justice. Lucas also seems to argue that his first trial judge committed misconduct by not explaining the significance of Lucas's right to proceed with the impaneled jury or asking if Lucas intended to waive that right.

The trial court is presumed to perform its function regularly and properly without bias or prejudice, and a party claiming something to the contrary must support the claim. *Wolfkill Feed & Fertilizer Corp. v. Martin*, 103 Wn. App. 836, 841, 14 P.3d 877 (2000). Lucas cites only to CJC 1.2, 2.2, 2.3, and 2.11 to support his claim. Nothing in these rules calls the trial court's conduct in this case into question. Lucas cites no authority to establish that the trial court had an ethical

16

obligation to inform him of the consequences of a decision to seek a mistrial when he had conferred with counsel. Without more, we reject this unsupported argument. *In re Pers. Restraint of Caldellis*, 187 Wn.2d 127, 146-47, 385 P.3d 135 (2016).

C.      Ineffective Assistance of Counsel

Lucas advances a number of claims of ineffective assistance of counsel involving two of his attorneys.[2] Because we reverse Lucas's bail jumping conviction, we need not address Lucas's ineffective assistance arguments pertaining to this reversed conviction. We reject each of Lucas's other claims pertaining to his trial attorney.

1.      Principles of ineffective assistance of counsel

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). To demonstrate that he received ineffective assistance of counsel, Lucas must show both (1) that defense counsel's performance was deficient and (2) that the deficient performance resulted in prejudice. *State v. Linville*, 191 Wn.2d 513, 524, 423 P.3d 842 (2018). Defense counsel's performance is deficient if it falls below an objective standard of reasonableness. *State v. Estes*, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017). We strongly presume that defense counsel's performance was not deficient. *State v. Emery*, 174 Wn.2d 741, 755, 278

---

[2] Related to these claims, Lucas also moves to strike the State's offered declaration of Teresa Chen, as well as a number of factual assertions made in the State's response brief that he claims are not supported by admissible evidence. "[A] motion to strike is typically not necessary to point out evidence and issues a litigant believes this court should not consider." *Engstrom v. Goodman*, 166 Wn. App. 905, 909 n.2, 271 P.3d 959 (2012). Argument in the brief is the appropriate vehicle for pointing out reliance on allegedly improper materials. *Id.* We accordingly deny Lucas's motions to strike. *See id*. We have not relied on evidence that the State submitted with its response to Lucas's PRP.

P.3d 653 (2012). To overcome this presumption, Lucas must show "'the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel.'" *Id.* (quoting *State v. McFarland*, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995).

Prejudice ensues if there is a reasonable probability that the result of the proceeding would have been different had defense counsel not performed deficiently. *Estes*, 188 Wn.2d at 458. Because both prongs of the ineffective assistance of counsel test must be met, the failure to demonstrate either prong will end our inquiry. *State v. Classen*, 4 Wn. App. 2d 520, 535, 422 P.3d 489 (2018). The same prejudice standard for ineffective assistance applies in the context of a PRP as in a direct appeal. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 845, 280 P.3d 1102 (2012).

2.      Lucas's claims of ineffective assistance

First, Lucas suggests that his trial counsel was ineffective because he tried to withdraw from the case before trial. But the record shows that counsel was still prepared to ably represent Lucas at trial in the event his motion to withdraw was denied. Lucas therefore fails to show that counsel was deficient on this basis. Lucas also seems to suggest that defense counsel rendered ineffective assistance when he successfully withdrew prior to sentencing. Lucas does not explain how it is deficient performance for defense counsel to properly withdraw from representation with permission from the trial court, nor does he make any showing that he was prejudiced by representation from a new attorney at sentencing. We reject this argument.

Second, Lucas claims his trial counsel was deficient for refusing to file a motion for change of venue based on the initial judge's appearance of bias. Given the number of other judges on the Pierce County Superior Court, Lucas does not demonstrate that he was entitled to a change of venue, that such a motion would have been granted, or that a change of venue would have changed

the outcome of his case. Thus, he does not show his counsel was deficient or that prejudice ensued. We reject this argument.

Third, Lucas claims he asked his trial counsel to obtain a drug offender sentencing alternative, which counsel failed to do. But whether Lucas could obtain a sentencing alternative was not entirely within defense counsel's control. *See State v. Moen*, 150 Wn.2d 221, 227, 76 P.3d 721 (2003). The State argued against the sentencing alternative when Lucas's last attorney argued for one during sentencing, and the trial court agreed with the State. Thus, Lucas has not shown that trial counsel was deficient or that prejudice ensued.

Fourth, Lucas argues that trial counsel was ineffective for failing to cross-examine Roberts on some inconsistencies in his testimony. In particular, Lucas claims that when he noted those inconsistencies on a piece of paper and showed them to trial counsel, counsel then "crumpled up the paper and threw it in [Lucas's] face, saying, 'I'm going to do this my way.'" PRP at 7. Lucas does not cite to anything in the record or present any new evidence to support this claim other than a point in the transcript during Roberts's testimony where the court reporter noted a "[d]iscussion off the record." VRP (Jan. 30, 2018) at 96. Lucas claims his bare allegation in his PRP is sufficient because it was reasonable for the court reporter not to record this confidential attorney-client conversation and that there is "no reason in the record to disbelieve" Lucas's allegation. PRP Reply Br. at 19.

However, it is Lucas's burden to show deficient performance and a reasonable probability that it affected the outcome of his trial. This bare allegation is insufficient; he must demonstrate competent, admissible evidence to support this claim. *Rice*, 118 Wn.2d at 886. Nor does Lucas meet his burden with respect to trial counsel's alleged failure to properly cross-examine Roberts.

19

The extent of cross-examination is a matter of judgment and strategy, and Lucas does not show how the outcome of his trial would have been different had counsel cross-examined Roberts any differently. *Davis*, 152 Wn.2d at 720. Lucas has not met his burden with respect to either prong of ineffective assistance.

Fifth, Lucas challenges his trial counsel's failure to exclude the shaved keys admitted at trial on the grounds that the keys may have somehow been tampered with when the car was towed. Roberts testified that he found multiple sets of shaved keys on the floorboard underneath the passenger seat and on the passenger seat and that he packaged, numbered, and booked each set into evidence. Although he acknowledged that the driver of the tow truck had moved one set of keys off the driver's seat, there is nothing in the record to suggest that those keys ever left the car or that any of the other keys were moved. Nor is there any evidence that the tow truck driver in any way tampered with the keys. Lucas therefore has not demonstrated that counsel was deficient.

Sixth, Lucas claims trial counsel was ineffective for asking him whether he "got *back in* the car" when Roberts confronted him. VRP (Jan. 30, 2018) at 177 (emphasis added). Lucas reasons that his defense hinged on his explanation that he had been innocently walking by when the true perpetrator got out of the car and ran away, so counsel's phrasing of the question prejudicially suggested to the jury that Lucas was lying about never having previously been in the car.

This was an isolated slip of the tongue, and defense counsel quickly rephrased the question. Moreover, Lucas had just testified that Roberts had ordered him to "'get back in your car.'" *Id.* at 176. And Roberts consistently testified that he saw the driver, Lucas, get out of the car and then try to walk away and that he told Lucas to "step back into his vehicle." *Id.* at 40-43. There is no

reasonable probability that, had defense counsel not accidentally said that Lucas "got back in the car," the jury would have disbelieved Roberts's testimony and instead believed Lucas's version of events. *Id.* at 177. We reject this argument.

Finally, Lucas argues for the first time in his reply brief that trial counsel was ineffective in presenting his motion to disqualify the initial judge and in advising Lucas of his rights after the first jury was impaneled. Issues raised for the first time in a reply brief are too late to warrant consideration. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). We therefore do not reach these arguments.

None of Lucas's assertions of ineffective assistance of counsel supports a grant of his PRP or remand for a reference hearing. We therefore deny his PRP.

CONCLUSION

We affirm Lucas's convictions for possession of a stolen vehicle and making or possessing motor vehicle theft tools, reverse his conviction for bail jumping, and deny his PRP. We remand for further proceedings consistent with this opinion.

No. 52022-2-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

We concur:

Maxa, C.J.

Melnick, J.